[Crim. No. 41536. Second Dist., Div. Five. Nov. 8, 1982.]

In re JOSE R., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JOSE R., Defendant and Appellant.

**COUNSEL**

Dennis L. Cava, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Robert F. Katz and Linda C. Johnson, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**FEINERMAN, P. J.**—Jose R. appeals from an order of the juvenile court declaring him a ward of the court, pursuant to section 602 of the Welfare and Institutions Code, placing him in the Joan Green Group Home and imposing certain conditions of probation to be in effect during the minor's placement and upon return to the home of his parents. The trial court's order was based upon a finding that the appellant had mingled a harmful substance with food, with the intent that it should be taken by a human being to his injury (Pen. Code, § 347) and had committed three assaults with a deadly weapon and by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)). The "deadly weapon" which was the subject of these three counts was an apple with a pin embedded therein.

Appellant contends that there was a lack of substantial evidence to support the trial court's finding that appellant's conduct violated the provisions of Penal Code section 245, subdivision (a), that the prosecution did not establish by "clear proof" that the appellant knew the "wrongfulness" of his conduct, that the trial court improperly imposed certain conditions of probation, and that the trial court erred in failing to expressly declare the assault offenses misdemeanors or felonies. We affirm with a remand to the superior court for a declaration by the court as to whether the violations of Penal Code section 245, subdivision (a) are misdemeanors or felonies.

### Statement of Facts

On November 13, 1980, Jose R. was one of 11 students enrolled in a special class for children with emotional problems in the Drifill School in Oxnard. Jose was 11 years of age and a sixth grader. Most of the students in the class, including Jose, were there because of behavior problems. However, there also were some students who had learning disabilities enrolled in the class. Lee L., Randy S., and John H. were students in Jose's class.

Dorothy Chambers and Eileen Cole were teachers' aides assigned to work with the children in the emotionally handicapped class. On November 13, 1980, the class went to the school cafeteria for lunch. When Mrs. Chambers told the appellant and Lee L. that they were being too noisy, appellant told her that it "wasn't any of her business." As a result, she decided to seek the assistance of the school principal, Clark Hermansen. When Mrs. Chambers returned to the cafeteria, appellant, Lee L. and some of the other boys were gone.

Randy S., age 12, testified that he joined the appellant, Lee L. and a boy named Leon outside the cafeteria after lunch. Red apples had been served for

dessert and appellant had some red apples. The four boys huddled together and appellant took out an apple, made a "little C-shape" with his nail and inserted a "needle"[1] in the apple and covered it over with the skin and then said, "Let's give it to the teacher." Appellant was giggling when he made that statement. Randy did not remember telling a police officer about two apples and two pins. However, Officer Mulville testified that Randy told him that he saw appellant put two pins in two apples.

Mrs. Chambers returned to the cafeteria before dismissal time and shortly thereafter appellant and Lee L. also returned to the cafeteria. Each of the boys offered her an apple and she declined their offers. Appellant then gave Mrs. Chambers an apple, which she held in her hand. Randy S. came in and said "Mrs. Chambers, please don't eat that apple. There's a pin in it." Randy took the apple from Mrs. Chambers, removed a pin that was inserted in the apple and threw the pin in the trash. Mrs. Cole testified that she too was offered an apple by both the appellant and Lee L. She took an apple from the appellant and put it on the table in front of her. Randy also told her that there was a pin in her apple. He pulled the pin out and threw it away.

Principal Clark Hermansen examined an apple that Mrs. Chambers brought to him. He stated that it contained an embedded straight pin with the point of the pin sticking out at the surface of the apple. At about 1:20 p.m., on November 13, 1980, Officer James Struck picked up appellant for truancy and brought him to the principal's office at Drifill School. The officer and Hermansen were discussing appellant's truancy problems and the subject of the apple was brought up. Appellant overheard the conversation, started crying, and blurted out "that he didn't put the pin in the apple, that Lee did, that he just had given it to the teacher and she didn't want it, so he gave it back to Lee."

John H., age 10, was eating his lunch in the school cafeteria when he was offered a red apple by Lee. It was one of the apples that had been offered to Mrs. Chambers and Mrs. Cole by appellant and Lee. Just before John bit into the apple, Randy warned him that there was a pin in the apple and removed the pin from the apple and threw it in the trash. John then bit into a green apple that he had brought from home. It also had a pin in it which "poked" the side of his mouth. He went to see the school nurse, Linda Butcher, who examined him and saw a slight reddening on the side of his gum. On November 25, 1980, she examined John again and found some generalized puffiness of the jaw and gums.[2]

---

[1]Randy later testified that the "needle" had a head on it similar to a pin that had been marked as People's No. 2 for identification.

[2]The trial court found that the evidence was insufficient to show that appellant assaulted John H. by placing a pin in the green apple and offering it to him. The court did sustain count 5 of the petition based on an assault on John H. when he was given a red apple containing a pin by Lee L. The court made the following finding in its minute order dated August 18, 1981: "As to Count 5, the court inferred that the co-offenders acted in concert from start to finish, that the minor

DISCUSSION

I.

■ Was there a lack of substantial evidence to support the trial court's finding that appellant's conduct violated the provisions of Penal Code section 245, subdivision (a)?

■ The standard of proof in juvenile proceedings involving criminal acts is the same as the standard in adult criminal trials. (*In re Winship* (1970) 397 U.S. 358, 368 [25 L.Ed.2d 368, 377, 90 S.Ct. 1068].) ■ Thus, the standard of appellate review as delineated in *People v. Johnson* (1980) 26 Cal.3d 557, 562 [162 Cal.Rptr. 431, 606 P.2d 738], is applicable in considering the sufficiency of the evidence in a juvenile proceeding. This court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. We must presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence (*People v. Reilly* (1970) 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475 P.2d 649]) and we must make all reasonable inferences that support the finding of the juvenile court. (*In re Charles G.* (1979) 95 Cal.App.3d 62, 67 [156 Cal.Rptr. 832].)

■ To prove a violation of Penal Code section 245, subdivision (a), the prosecution must establish that a person was assaulted and that the assault was committed by the use of a deadly weapon or instrument or by means of force likely to produce great bodily injury. Assault with a deadly weapon is a general criminal intent crime (*People v. Parks* (1971) 4 Cal.3d 955, 959 [95 Cal.Rptr. 193, 485 P.2d 257]) and requires proof only of an *attempt* to commit a violent injury upon the person of another. It does not require proof that an injury occurred. (*People v. Herrera* (1970) 6 Cal.App.3d 846, 851 [86 Cal.Rptr. 165].) The requisite intent for the commission of an assault with a deadly weapon is the intent to commit a battery. (*People v. Parks, supra,* 4 Cal.3d at p. 959.) Moreover, when an act inherently dangerous to others is committed with a conscious disregard of human life and safety, the intent to commit a battery is presumed. (*People v. Lathus* (1973) 35 Cal.App.3d 466, 470 [110 Cal.Rptr. 921].)

■ A "deadly weapon" within the meaning of Penal Code section 245, subdivision (a) is any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily

---

[appellant] was present with Lee L., and that each minor knew, encouraged and aided in the actions of the other."

injury. In determining whether an object not inherently deadly or dangerous acquires this characteristic, the trier of fact may look to the nature of the weapon, the manner of its use, and all other factors that are relevant to this issue. (*People v. White* (1963) 212 Cal.App.2d 464, 465 [28 Cal.Rptr. 67]; *People v. Russell* (1943) 59 Cal.App.2d 660, 665 [139 P.2d 661].)[3]

In the case at bench we find that the appellant's conduct in knowingly offering to a potential victim an apple with a straight pin embedded in the apple constitutes a violation of Penal Code section 245, subdivision (a). There is ample evidence indicating that pins were purposely concealed in the apples by the appellant and offered by appellant and Lee L. to Mrs. Chambers, Mrs. Cole and John H. with the intent that they be ingested. Linda Butcher, a registered nurse with approximately 20 years of experience, was qualified as an expert witness and testified that an ingested pin was medically dangerous to a human being and potentially life-threatening. She stated that a pin could perforate the esophagus or any part of the intestinal canal, including the stomach. If the esophagus was perforated, a pin could enter the chest cavity and expose the cavity to infection. She further testified that if a pin "got from the stomach or small intestine during peristalsis, moving the pin down and perforated the stomach or small intestine, the integrity of the abdominal cavity would make it open to peritonitis or other infections."

■ Relying upon *People v. Covino* (1980) 100 Cal.App.3d 660 [161 Cal.Rptr. 155], appellant argues that in this case there was only a mere possibility that a person might take a bite of an apple with an embedded pin and swallow the pin and sustain great bodily injury. He contends that the People had the burden of proving that the probable result of swallowing the pin would be the infliction of great bodily injury. Appellant's reliance upon *Covino* is misplaced. In *Covino* the court held that in determining whether the force essential to all assaults is of such a nature or degree that the probable result of its application will be the infliction of great bodily injury, the trier of fact should not consider factors which the defendant does not know or would not reasonably be expected to know, such as unusual sensitivity on the part of a victim or the chance intervention of a third party. None of these factors are present here. Penal Code section 245, subdivision (a) prohibits an assault by means of force *likely* to produce great bodily injury, not the use of force which does in fact produce great bodily injury.

---

[3]Demonstrative of this precept are the following cases in which objects not inherently dangerous have been found to be a deadly weapon: a pillow (*People v. Helms* (1966) 242 Cal.App.2d 476, 486 [51 Cal.Rptr. 484]); an automobile (*People v. Claborn* (1964) 224 Cal.App.2d 38, 42 [36 Cal.Rptr. 132]); a large rock (*People v. White, supra,* 212 Cal.App.2d 464, 465); a razor blade (*People v. Richardson* (1959) 176 Cal.App.2d 238, 239-240 [1 Cal.Rptr. 306]); a fingernail file (*People v. Russell, supra,* 59 Cal.App.2d 660, 665).

Whether a force is likely to produce great bodily injury is essentially a question of fact for the trier of fact. (*People* v. *Hopkins* (1975) 44 Cal.App.3d 669, 676 [119 Cal.Rptr. 61].) Inasmuch as we must review the record in the light most favorable to the juvenile court order, we find that there was substantial evidence to support the findings of the trial judge in this area. Linda Butcher's testimony was unrebutted and is sufficient to support an inference by the trial judge that the swallowing of a pin is a force "likely to produce great bodily injury" within the meaning of Penal Code section 245, subdivision (a).

## II.

Did the prosecution establish by "clear proof" that the appellant knew the "wrongfulness" of his conduct?

Penal Code section 26 applies to proceedings under Welfare and Institutions Code section 602. (*In re Gladys R.* (1970) 1 Cal.3d 855, 862-867 [83 Cal.Rptr. 671, 464 P.2d 127].) Penal Code section 26 provides in pertinent part: "All persons are capable of committing crimes except those belonging to the following classes: One—Children under the age of 14, in the absence of clear proof that at the time of committing the act charged against them, they knew its wrongfulness." In *In re Gladys R., supra,* at page 867, the Supreme Court stated: "Only if the age, experience, knowledge, and conduct of the child demonstrate by clear proof that he has violated a criminal law should he be declared a ward of the court under section 602."

In the instant case our examination of the record indicates that the quantum of evidence was sufficient to establish by "clear proof" that the appellant knew the "wrongfulness" of his acts. Appellant was 11 years old when he engaged in the activities resulting in his arrest. Mrs. Chambers, a teacher's aide who had known appellant for approximately two to three years, testified that he was an intelligent young man and knew that it was wrong to hurt someone else. Clark Hermansen, the principal of Drifill School, had supervised the appellant in two different elementary schools and had known the appellant since he was in the second or third grade. Hermansen stated that appellant knew the difference between right and wrong and knew it was wrong to "hurt somebody else."

The conduct of the appellant during and after the perpetration of the acts under analysis also evidenced an awareness of the wrongfulness of those acts. Appellant and his friends gathered in a football type huddle to shield their activities while appellant was inserting the pin into the apple. After offering an apple to Mrs. Chambers and Mrs. Cole, the appellant fled from the school with his friend Lee L. Appellant was apprehended by Officer James Struck about 10 to 12 blocks from the school at 1:20 p.m. A consciousness of guilt by appellant

may be inferred from the fact of flight and, from the fact of appellant's state of mind of consciousness of guilt, it may be inferred that appellant acted in conformity with that state of mind when he perpetrated the charged offenses. (*People v. Jack* (1965) 233 Cal.App.2d 446, 458 [43 Cal.Rptr. 566].) When the appellant was brought back to school by Officer Struck, he attempted to exonerate himself by claiming that Lee L. had inserted the pin into the apple. This conduct also warrants an inference that the appellant knew the wrongfulness of his actions.

Thus, we conclude that the totality of the evidence in this case established by clear proof that the appellant knew the wrongfulness of his conduct.

### III.

■ Did the trial court improperly impose certain conditions of probation?

Appellant contends that probation conditions 10, 11 and 14 had no relation to the offenses charged or the appellant's social history. Probation condition 10 provides: "You shall consent to any tests to determine narcotic or dangerous drug usage and consent to a search of your person, that portion of your residence where you customarily sleep, your vehicle, or any other possessions at any time, by a probation officer or any peace officer for dangerous drugs, narcotics & weapons." Probation condition 11 provides: "You shall not use or possess any alcoholic beverage and shall consent to any test to determine alcohol usage." Probation condition 14 provides: "You shall not possess any weapon."

In adult criminal cases it has been held that: "A condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . . [Citation.] Conversely, a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality." (*People* v. *Lent* (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545], citing in part, *People* v. *Dominguez* (1967) 256 Cal.App.2d 623, 627 [64 Cal.Rptr. 290].)

In *In re Todd L.* (1980) 113 Cal.App.3d 14, 19-20 [169 Cal.Rptr. 625], we held: "A condition of probation which is impermissible for an adult criminal defendant is not necessarily unreasonable for a juvenile receiving guidance and supervision from the juvenile court. . . .

"Thus in planning the conditions of appellant's supervision, the juvenile court must consider not only the circumstances of the crime but also the minor's entire social history."

At the outset we point out that appellant was 12 years of age at the time of his disposition hearing (11 years of age at the time the offenses were committed) and was required by probation condition 2 to "obey all laws." As a minor, appellant could not lawfully possess or use alcoholic beverages. (See Cal. Const., art. XX, § 22; Bus. & Prof. Code, §§ 25658, 25662.) There are numerous statutes which prohibit the possession or use of drugs, narcotics and weapons by adults and minors. Needless to say, appellant is obliged to obey these laws as well. Appellant's social history reveals an extended record of assaultive and delinquent behavior. The appellant had been involved in paintsniffing and was living at home with an older brother who was a heroin addict and had introduced the appellant to paintsniffing.

Under the disposition order of the trial court, the appellant was not being returned home to his parents for at least part of the time the conditions of probation were to remain in effect. He was placed in a suitable placement (Joan Green Group Home) where he would be living with other minors placed by the juvenile court. In light of the appellant's social history and the legislative policies set forth in Welfare and Institutions Code sections 202,[4] 730,[5] and

---

[4]Welfare and Institutions Code section 202 provides: "(a) The purpose of this chapter is to secure for each minor under the jurisdiction of the juvenile court such care and guidance, preferably in his own home, as will serve the spiritual, emotional, mental, and physical welfare of the minor and the best interests of the state; to protect the public from criminal conduct by minors; to impose on the minor a sense of responsibility for his own acts; to preserve and strengthen the minor's family ties whenever possible, removing him from the custody of his parents only when necessary for his welfare or for the safety and protection of the public; and, when the minor is removed from his own family, to secure for him custody, care, and discipline as nearly as possible equivalent to that which should have been given by his parents. This chapter shall be liberally construed to carry out these purposes.

"(b) The purpose of this chapter also includes the protection of the public from the consequences of criminal activity, and to such purpose probation officers, peace officers, and juvenile courts shall take into account such protection of the public in their determinations under this chapter."

[5]Welfare and Institutions Code section 730 provides: "When a minor is adjudged a ward of the court on the ground that he is a person described by Section 602, the court may order any of the types of treatment referred to in Section 727, and as an additional alternative, may commit the minor to a juvenile home, ranch, camp or forestry camp. If there is no county juvenile home, ranch, camp or forestry camp within the county, the court may commit the minor to the county juvenile hall.

"When such ward is placed under the supervision of the probation officer or committed to his care, custody and control, the court may make any and all reasonable orders for the conduct of such ward including the requirement that he go to work and earn money for the support of his dependents or to effect reparation and in either case that he keep an account of his earnings and report the same to the probation officer and apply such earnings as directed by the court. The court may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced."

1001.5,[6] probation conditions 10, 11 and 14 were appropriate in this case to facilitate alcoholic and narcotic controls among all the minors who would be at the Joan Green Group Home with appellant. The conditions of probation requiring the appellant to submit to a search for weapons and ordering him not to use or possess weapons were appropriate in this case since they relate to the appellant's present offense and his social history. The probation report stated that he had been involved in other assaultive situations and had threatened a witness in a rape case. In this case, the appellant had hidden pins in apples which he had offered to several persons.

We find no abuse of discretion in the imposition of the contested probation conditions by the trial court. These conditions were reasonably related to appellant's rehabilitative needs.

## IV.

■ Did the trial court err in failing to expressly declare the assault offenses misdemeanors or felonies?

In adult cases the violation of Penal Code section 245, subdivision (a) is punishable alternatively as a felony or a misdemeanor. Welfare and Institutions Code section 702 requires that when a minor is found to have committed such an offense, "the court shall declare the offense to be a misdemeanor or felony." Although the trial court reserved this determination for the disposition hearing, the record indicates that no express findings on this issue were ever made by the trial court. It was required to do so. (*In re Ricky H.* (1981) 30 Cal.3d 176, 191-192 [178 Cal.Rptr. 324, 636 P.2d 13].) However, this does not necessitate reversal of the case as suggested by the appellant. On remand, the trial court will be able to determine the character of the offense as required by Welfare and Institutions Code section 702.

The order declaring the appellant a ward of the court, taking custody away from his parents and placing him in the Joan Green Group Home, is affirmed. The terms and conditions of probation to be in effect during placement and

---

[6]Welfare and Institutions Code section 1001.5 provides: "Except when authorized by law, or when authorized by the person in charge of an institution or camp administered by the Youth Authority, or by an officer of the institution or camp empowered by the person in charge of the institution or camp to give such authorization, any person who knowingly brings or sends into, or who knowingly assists in bringing into, or sending into, any institution or camp, or the grounds belonging to any institution or camp, administered by the Youth Authority, any narcotic, the possession of which is prohibited by Division 10 (commencing with Section 11000) of the Health and Safety Code, any restricted dangerous drug the possession of which is prohibited by Division 10.5 (commencing with section 11901) of the Health and Safety Code, any alcoholic beverage or any firearm, weapon or explosive of any kind shall be punished by imprisonment in a county jail for not more than one year or by imprisonment in the state prison."

upon release of the minor to his parents are also affirmed. However, the case is remanded to the superior court for a declaration by the court as to whether the assault offenses are misdemeanors or felonies.

Stephens, J., and Ashby, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 12, 1983.