[No. E035010. Fourth Dist., Div. Two. Nov. 10, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
LARRY ROBERT PAGE, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III and IV.

## Counsel

Maria Morrison, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Janelle Boustany, Marilyn L. George and Felicity Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**RICHLI, J.**—Defendant Larry Robert Page or his accomplice took money from the victim's pockets; either before or afterwards, the accomplice held a sharp pencil up to the victim's neck and warned him not to come back with the police. As a result, defendant was found guilty of second degree robbery (Pen. Code, §§ 211, 212.5, subd. (c)) and assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)). He was given a suspended sentence of three years in prison, then placed on probation for five years, on conditions including a year in jail.

Defendant contends, among other things, there was insufficient evidence that the pencil was a deadly weapon or, alternatively, because there *was* substantial evidence that the pencil was *not* a deadly weapon, the trial court erred by failing to instruct on simple assault as a lesser included offense. In the published portion of this opinion, we will hold that the pencil was a deadly weapon as a matter of law, even though the accomplice did not actually wield it with deadly force and even though she used it solely in connection with a threat to harm the victim in the future.

In the unpublished portion of this opinion, we accept the People's concession that the sentence violated Penal Code section 654. Otherwise, we find no error. Hence, we will modify the sentence and affirm the judgment as modified.

I

### FACTUAL BACKGROUND

A. *Testimony of the Victim.*

On July 21, 2003, around 3:30 a.m., victim Craig Lucas was on Davidson Street in San Bernardino, walking home from his job at a Taco Bell. As he walked past one house, he noticed about eight people standing outside.

Two of these people—a young man and a young woman—came up to Lucas from behind. The woman asked, in a "hostile" manner, what he was looking at. She then "came up and started emptying out [his] pockets." Lucas did not resist because he was afraid and he "didn't want to get hurt . . . ." She took his wallet, which contained about $32. She also took a case he was holding, containing a compact disc (CD) player and some CD's. She took his glasses off and stomped on them.

Next, the young man patted Lucas down, took things from his pockets, and asked "if [he] had anything else on [him]." The young man "[s]eemed" drunk or high. At trial, Lucas identified the young man as defendant.

"[A]fter they took everything," the woman held "a sharp[,] pointy object" up to the side of Lucas's neck, touching him, and told him not to involve the police. She said that if he did, she knew where he lived. Defendant laughed. The two then walked off together. When Lucas got home, he called the police.

B. *Testimony of Defendant's Accomplice.*

Kendra Reader admitted being defendant's accomplice. She had pleaded guilty, pursuant to a plea bargain that required her to testify truthfully. No promises had been made to her concerning her sentence.

On July 21, 2003, at 3:30 a.m., Reader was "hanging out" with some people she had just met, including defendant, at a house on Davidson Street. She noticed Lucas seeming to loiter near her car. After he walked by the house, she went up to him and asked what he was doing. Defendant followed her.

Lucas was holding a CD player and a pencil. Reader grabbed the CD player and threw it on the ground. At some point, she took his glasses and broke them. She "thought he was going to come after [her]," so she grabbed his pencil, held it to his neck, and "told him not to come back with his friends or the cops." Lucas, evidently concluding he was being robbed, told them where they could find his wallet and $20 in loose cash. Defendant took both items. Reader denied going through Lucas's pockets.

As defendant and Reader walked away, Reader picked up the CD player. They went to a gas station and bought gas. They tried to pay with Lucas's credit card, but "[i]t didn't work," so they paid with cash from Lucas's wallet instead.

## C. *Testimony of the Police.*

Around 5:00 a.m., Officers Chris Johnson and Scott Mathews went to the house on Davidson Street to investigate a trespassing report. They discovered defendant and Reader "running down the side of the house and trying to hide." Defendant and Reader matched the description given in an earlier robbery report, so the officers arrested them. In an in-field showup, Lucas "positively identified" both defendant and Reader. Identification cards belonging to Lucas were found on defendant's person. Lucas's CD player was found in Reader's car.

When the police interviewed Lucas, he told them defendant "did not do anything except laugh[.]"

Officer Johnson transported defendant to the police station, arriving around 7:00 a.m. Defendant was incoherent and "in and out of consciousness."

## II

## THE EVIDENCE THAT AN ASSAULT WAS COMMITTED WITH A DEADLY WEAPON

Defendant contends there was insufficient evidence that the assault was committed with a deadly weapon. Alternatively, he contends there was substantial evidence that it was not committed with a deadly weapon, and therefore the trial court erred by failing to instruct on the lesser included offense of simple assault.

### A. *The Sufficiency of the Evidence That the Pencil Was a Deadly Weapon.*

"As used in [Penal Code]section 245, subdivision (a)(1), a 'deadly weapon' is 'any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury.' [Citation.] Some few objects, such as dirks and blackjacks, have been held to be deadly weapons as a matter of law; the ordinary use for which they are designed establishes their character as such. [Citation.] Other objects, while not deadly per se, may be used, under certain circumstances, in a manner likely to produce death or great bodily injury. In determining whether an object not inherently deadly or dangerous is used as such, the trier of fact may consider the nature of the object, the manner in which it is used, and all other facts relevant to the issue. [Citations.]" (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028–1029 [68 Cal.Rptr.2d 655, 945 P.2d 1204], quoting *In re Jose R.* (1982) 137 Cal.App.3d 269, 275–276 [186 Cal.Rptr. 898].)

" 'When it appears, however, that an instrumentality . . . is capable of being used in a "dangerous or deadly" manner, and it may be fairly inferred from the evidence that its possessor intended on a particular occasion to use it as a weapon should the circumstances require, . . . its character as a "dangerous or deadly weapon" may be thus established, at least for the purposes of that occasion.' [Citation.]" (*People v. Graham* (1969) 71 Cal.2d 303, 328 [78 Cal.Rptr. 217, 455 P.2d 153], quoting *People v. Raleigh* (1932) 128 Cal.App. 105, 108–109 [16 P.2d 752].)

For example, in *People v. Simons* (1996) 42 Cal.App.4th 1100 [50 Cal.Rptr.2d 351], the defendant held several police officers at bay by brandishing a screwdriver. He yelled, "Shoot me" and "[C]ome on, kill me, go ahead . . . ." (*Id.* at p. 1106.) Whenever they approached, " 'he would bring the screwdriver forward toward [them].' " (*Ibid.*) He was convicted of exhibiting a deadly weapon to resist arrest. On appeal, he argued that a screwdriver can never be a deadly weapon. (*Id.*, at pp. 1105–1106.) The court not only rejected this contention, but also held that, on these facts, the screwdriver was a deadly weapon as a matter of law: "The evidence clearly demonstrated that the screwdriver was capable of being used as a deadly weapon and that defendant intended to use it as such if the circumstances required." (*Id.* at p. 1107.)

In *People v. Smith* (1963) 223 Cal.App.2d 431 [36 Cal.Rptr. 165], the defendant was convicted of first degree robbery, which, at the time, required him to be armed with a deadly or dangerous weapon. (*Id.* at p. 432, 36 Cal.Rptr. 165.) The court held there was sufficient evidence of such arming: "The victim testified that defendant stuck a knife on his neck, that he did not see it, but felt the point. There was no objection to the answer that the object was a knife, that it was a conclusion, if conclusion it really was. The knife could be found to be a deadly weapon, without regard to its size, from the manner of its use. [Citations.]" (*Ibid.*)

Finally, in *People v. Klimek* (1959) 172 Cal.App.2d 36 [341 P.2d 722], the two defendants accosted the victim. One of them "poked something in his side and said: 'Don't move, Buddy, or I will kill you.' " (*Id.* at p. 39.) They took his money and his watch. (*Ibid.*) When they were arrested, just minutes later, one of them was found to have an ice pick. (*Id.* at p. 40.) They were convicted of first degree robbery, based on being armed with a deadly or dangerous weapon. (*Id.* at pp. 40–41.) The court found sufficient evidence that the ice pick was a deadly weapon: "Its intended use and appellant's ability to use it as a deadly weapon are clearly shown by the statement of appellant: 'Don't move, Buddy, or I will kill you.' " (*Id.* at p. 42; see also *People v. Moran* (1973) 33 Cal.App.3d 724, 730 [109 Cal.Rptr. 287] [three-pronged fork used to commit rape constituted deadly weapon]; *People v.*

*Garcia* (1969) 275 Cal.App.2d 517, 521 [79 Cal.Rptr. 833] [bow and arrow constituted deadly weapon, even if merely held in firing position].)

■ Certainly the pencil here was capable of being used as a deadly weapon, particularly if thrust into the neck, as Reader was in position to do. Defendant essentially argues, however, that there was insufficient evidence that she did use it as a deadly weapon. As he notes, she merely touched Lucas's neck with it; she did not exert any force, much less in any way that could have produced great bodily injury or death. Each of the cases we have cited, however, involved some hard, sharp, pointy thing that was used only to threaten, and not actually used to stab. It necessarily follows that an instrument can be a deadly weapon even if it is not actually used with deadly force.

Defendant would distinguish these cases on the ground that none of them dealt with the aggravated assault statute. Absent a peculiar statutory definition, however, "no sound reason appears to define a 'deadly weapon' for purposes of section 245 differently than it is defined in other contexts under other statutes." (*People v. Lochtefeld* (2000) 77 Cal.App.4th 533, 540 [91 Cal.Rptr.2d 778]; see also *People v. Brookins* (1989) 215 Cal.App.3d 1297, 1305–1307 [264 Cal.Rptr. 240].) Cases discussing the definition of a deadly weapon routinely rely on other cases dealing with different statutes. (E.g., *People v. Aguilar, supra*, 16 Cal.4th at p. 1029 [dealing with Pen. Code, § 245], citing *People v. Graham, supra*, 71 Cal.2d at p. 327 [dealing with former Pen. Code, § 211a].)

Admittedly, in each of the cases we have discussed, the defendant threatened to stab the victim immediately, at the time of the assault; he did not do so only because the victim complied or escaped. Here, then, it could be argued that Reader merely threatened to stab (or otherwise harm) the victim in the future, if he involved the police. Inferably, she did not intend to use the pencil in a deadly manner at that time.

This argument, however, does not go to whether there was sufficient evidence of a deadly weapon; rather, it goes to whether there was sufficient evidence of an assault. An assault is statutorily defined as " 'an unlawful attempt, coupled with the present ability, to commit a violent injury on the person of another, or in other words, it is an attempt to commit a battery. [Citations.] Accordingly the intent for an assault with a deadly weapon is the intent to attempt to commit a battery, a battery being "any willful and unlawful use of force or violence upon the person of another." ' " (*People v. Colantuono* (1994) 7 Cal.4th 206, 214 [26 Cal.Rptr.2d 908, 865 P.2d 704], quoting *People v. Rocha* (1971) 3 Cal.3d 893, 899 [92 Cal.Rptr. 172, 479 P.2d 372].)

■ Ordinarily, "[a]n assault occurs whenever ' "[t]he next movement would, at least to all appearance, complete the battery." ' [Citation.]" (*People v. Williams* (2001) 26 Cal.4th 779, 786 [111 Cal.Rptr.2d 114, 29 P.3d 197], italics omitted, quoting Perkins & Boyce, Criminal Law (3d ed. 1982) p. 164.) But there can also be an assault when the battery is only threatened. (*People v. McCoy* (1944) 25 Cal.2d 177, 192–193 [153 P.2d 315].) " 'Where a party puts in a condition which must be at once performed, and which condition he has no right to impose, and his intent is immediately to enforce performance by violence, and he places himself in a position to do so, and proceeds as far as it is then necessary for him to go in order to carry out his intention, then it is as much an assault as if he actually struck, or shot, at the other party, and missed him.' " (*Id.* at p. 193, italics omitted, quoting *People v. McMakin* (1857) 8 Cal. 547, 548–549.) A conditional *future* threat will not suffice. (See *ibid.*)

■ Here, Reader used the pencil as a deadly weapon. Certainly she was not threatening to write a note with it! She was not threatening that, if the victim involved the police, she would break his pencil; she was threatening to stab him with it. She viewed it, at that moment, as an instrument of great bodily injury or death. If instead she had pointed a loaded gun at the victim, it would still have been a deadly weapon, even if she threatened to harm him with it only in the future. Thus, there was ample evidence that the pencil was a deadly weapon. Indeed, on these facts, it was a deadly weapon as a matter of law.

The closer question is whether there was sufficient evidence that what Reader did with the deadly weapon constituted an assault. We hasten to add that defendant does not contend there was insufficient evidence of an assault; thus, he has waived this contention. We address it only as an alternative ground to waiver.

As we suggested above, if Reader used the pencil exclusively to make a conditional future threat, there was no assault.[1] The victim did testify that

---

[1] Subject to one caveat: Even though the statutory definition of battery requires "force or violence" (Pen. Code, § 242), this has the special legal meaning of a harmful or offensive touching. (*People v. Pinholster* (1992) 1 Cal.4th 865, 961 [4 Cal.Rptr.2d 765, 824 P.2d 571].) " ' "It has long been established, both in tort and criminal law, that 'the least touching' may constitute battery." ' " (*People v. Colantuono, supra,* 7 Cal.4th at p. 214, fn. 4, quoting *People v. Rocha, supra,* 3 Cal.3d at p. 899, fn. 12, quoting 1 Witkin, Cal. Crimes (1963) § 255, pp. 243–244.) It could therefore be argued that the "least touching" with the pencil constituted an assault, even aside from Reader's accompanying threats.

We need not decide, however, whether, under that theory, the pencil could or would constitute a deadly weapon. The jury was instructed that an assault requires "an act which, by its nature, would probably and directly result in the application of physical force upon another person . . . ." (CALJIC No. 9.00 (7th ed. 2003).) We do not believe a reasonable juror would

Reader did not threaten him with the pencil until after his property had already been taken. Our review, however, is governed by the deferential substantial evidence rule. Unlike Lucas, Reader testified that "while [she] was threatening him," defendant "went through his pockets." The jury could reasonably find that Reader continued to hold the pencil to the victim's neck as a present conditional threat, so defendant could accomplish the robbery.

We therefore conclude that there was substantial evidence of an assault with a deadly weapon.

### B. *Failure to Instruct on Simple Assault as a Lesser Included Offense.*

" '[A] trial court must instruct on lesser included offenses, even in the absence of a request, whenever there is substantial evidence raising a question as to whether all of the elements of the charged offense are present.' [Citation.] Conversely, even on request, a trial judge has no duty to instruct on any lesser offense *unless* there is substantial evidence to support such instruction. [Citation.]" (*People v. Cunningham* (2001) 25 Cal.4th 926, 1008 [108 Cal.Rptr.2d 291, 25 P.3d 519], quoting *People v. Lewis* (2001) 25 Cal.4th 610, 645 [106 Cal.Rptr.2d 629, 22 P.3d 392].) The question, then, is whether there was substantial evidence that defendant committed assault but not assault with a deadly weapon.

██ Once again, defendant argues that Reader did not use the pencil in a deadly manner. As we held in part II.A, *ante*, however, this raised a factual issue, at best, only with respect to whether Reader committed an assault, not with respect to whether the pencil was a deadly weapon. On the facts of this case, the pencil was a deadly weapon as a matter of law. The jury could have found defendant guilty of assault with a deadly weapon, or not guilty at all; but it could not reasonably have found him guilty of simple assault. It follows that the trial court was not required to instruct on simple assault.

### III, IV*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

have understood that this included the "least touching." Thus, to decide whether Reader's acts would probably and directly result in the application of physical force to Lucas's person, the jury had to consider whether she was threatening to harm him presently, or only in the future.

*See footnote, *ante*, page 1466.

## V

## DISPOSITION

The judgment is modified by staying execution of the three-year concurrent term for assault with a deadly weapon, said stay to become permanent upon defendant's service of the remainder of his sentence. The judgment as thus modified is affirmed.

Ramirez, P. J., and McKinster, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 26, 2005. George, C. J., did not participate therein.