SLOUGH, J., Dissenting.
I
INTRODUCTION
I respectfully disagree with my colleagues' conclusion that swiping a car key once with unknown force at a person's clothed torso from a few feet away, then fleeing, constitutes assault with a deadly weapon. The majority reaches this outlier holding only by leaving the record and engaging in gross speculation-they affirm the conviction based on what could have happened had the defendant, Brian Koback, not fled but instead continued swiping *334 the key at the victim and perhaps, possibly, aimed for his face or neck. This is error. Where the charged offense is assault with a typically innocuous object alleged to be deadly as used (an as-used aggravated assault), California Supreme *684 Court precedent requires the prosecution prove the defendant used the object with force "likely to produce death or great bodily injury" (the force-used test). ( People v. Aguilar (1997) 16 Cal.4th 1023, 1029, 68 Cal.Rptr.2d 655, 945 P.2d 1204, italics added ( Aguilar ).)
The only evidence regarding the force used in this case is the victim's testimony Koback swiped the key at him from a few feet away "with force" then immediately left the scene. How much force? Enough to gravely injure the victim? Enough only to scratch or graze him? The record doesn't provide an answer, and it is obvious that some force is not the same as force likely to produce death or great bodily injury. (See People v. Beasley (2003) 105 Cal.App.4th 1078, 1087, 130 Cal.Rptr.2d 717 ( Beasley ) [reversing conviction under Aguilar because the victim's testimony "did not describe the degree of force Beasley used in hitting her with the [broom]stick"].)
The majority pays lip service to Aguilar's force-used test by citing it in their analysis, but they don't actually apply it. Instead, they rely on an opinion involving the offense of exhibiting a deadly weapon to evade arrest in violation of Penal Code section 417.8. ( People v. Simons (1996) 42 Cal.App.4th 1100, 50 Cal.Rptr.2d 351 ( Simons ).) But because that crime does not "turn[ ] on the nature of the force used" ( Aguilar , supra , 16 Cal.4th at p. 1035, 68 Cal.Rptr.2d 655, 945 P.2d 1204 ) like an as-used aggravated assault does, it provides no support for their holding. Aguilar is binding California Supreme Court precedent we are required to follow. ( Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455-456, 20 Cal.Rptr. 321, 369 P.2d 937.) The majority cannot escape this duty by applying a different test from a nonbinding lower court opinion that predates Aguilar .
The majority's error is not harmless. By upholding an as-used aggravated assault conviction based on a key's capacity to inflict injury and their conjecture about what might have happened had things gone differently, my colleagues blur the important distinction between cases involving inherently deadly weapons and those involving objects alleged to be deadly as used . In this case, the blurring leads them to affirm a bad aggravated assault conviction. As precedent, it will lead to over-prosecution of simple assaults, treating people who use innocuous objects without injury as if they are just as culpable as people who wield weapons designed to inflict deadly injury. It is critical that we maintain the distinction, for a fool with a car key is much less dangerous than a fool with a dagger.
*335 II
DISCUSSION
A. Assault with an "Inherently" Deadly Weapon Versus Assault with an Object Deadly "As Used"
Assault is an attempted battery. ( People v. Rocha (1971) 3 Cal.3d 893, 899, 92 Cal.Rptr. 172, 479 P.2d 372.) The Penal Code defines it as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." ( Pen. Code, § 240 ; see also id. at § 242 [battery is "any willful and unlawful use of force or violence upon the person of another"].)
The more serious crime of aggravated assault in violation of Penal Code section 245 can be committed in a number of ways. Three types of aggravated assault are relevant here: (1) by means of force likely to produce great bodily injury, (2) by means of an inherently deadly weapon, and (3) by means of an object not designed to be a weapon but alleged to be a deadly weapon as used . The first and third type require a *685 showing of the amount of force the defendant used during the assault. "[T]he jury's decisionmaking process in an aggravated assault case ... is functionally identical regardless of whether, in the particular case, the defendant employed a weapon alleged to be deadly as used or employed force likely to produce great bodily injury; in either instance, the decision turns on the nature of the force [the defendant] used ." ( Aguilar , supra , 16 Cal.4th at p. 1035, 68 Cal.Rptr.2d 655, 945 P.2d 1204, italics added.) Only the second variety, assault with an inherently deadly weapon, requires no showing of force. Merely using the weapon to attempt an injury is enough.
A deadly weapon is any object specifically designed to produce death or great bodily injury. ( Aguilar , supra , 16 Cal.4th at p. 1029, 68 Cal.Rptr.2d 655, 945 P.2d 1204.) "Only [s]ome few objects, such as dirks and blackjacks, have been held to be deadly weapons as a matter of law; the ordinary use for which they are designed establishes their character as such." ( Ibid. ) A person commits assault with a deadly weapon in violation of Penal Code section 245, subdivision (a)(1) when they employ a deadly weapon in their attempt to injure someone. One may assault another with a deadly weapon "without making actual physical contact." ( Aguilar , at p. 1028, 68 Cal.Rptr.2d 655, 945 P.2d 1204.) "[T]he statute focuses on use of a deadly weapon," not on contact or injury. ( Ibid. )
Thus, one can commit assault with an inherently deadly weapon simply by threatening injury on another, such as by holding a dagger or blackjack close to someone in a menacing manner or by swinging at them, and missing. It wouldn't matter how hard you swung or how close you got to your target. The fact you used an inherently deadly weapon in your attempt to injure *336 someone is enough to warrant the conviction. (See, e.g., Simons , supra , 42 Cal.App.4th 1100, 50 Cal.Rptr.2d 351 ["Assault with a deadly weapon requires 'an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another' "]; People v. McCoy (1944) 25 Cal.2d 177, 190-191, 153 P.2d 315 [simply holding a knife up to victim's face and threatening to use it constituted aggravated assault because the knife was inherently dangerous and defendant exhibited a present ability and intent to use it if need be].) This is so precisely because the weapon is designed to be deadly, making the risk of injury from any use of the weapon to attempt an injury dire.
What happens, then, if the object used in the assault is not designed to be a weapon? The California Supreme Court addressed this issue in Aguilar , observing that "[some] objects, while not deadly per se, may be used, under certain circumstances, in a manner likely to produce death or great bodily injury." ( Aguilar , supra , 16 Cal.4th at p. 1029, 68 Cal.Rptr.2d 655, 945 P.2d 1204.) The test for whether a typically innocuous everyday object has been used as a deadly weapon in an assault is whether it was "used in such a manner as to be capable of producing and likely to produce , death or great bodily injury." ( Id . at pp. 1028-1029, 68 Cal.Rptr.2d 655, 945 P.2d 1204, italics added.) The first part of the test, capability, focuses on the nature of the object (is it sharp, heavy, blunt?) and whether it is possible to cause serious injury with it. Some objects will fail even this inquiry. It is probably impossible to kill or gravely injure someone with a rice cake, whereas we can all imagine how a person could do serious damage with a butter knife or a golf club.
The second part of the test, likelihood, focuses on how the defendant actually used the object. This inquiry "turns on the nature of the force used." ( *686 Aguilar , supra , 16 Cal.4th at p. 1035, 68 Cal.Rptr.2d 655, 945 P.2d 1204 ) Objects that can "be grasped while throwing a punch, like rolls of coins, batteries, ... bicycle footrests," (or car keys), may "be deemed instruments of [aggravated] assault" only if there is "sufficient proof" the object was actually used "in a manner likely to produce death or great bodily injury." ( In re David V. (2010) 48 Cal.4th 23, 30 & fn. 5, 104 Cal.Rptr.3d 471, 223 P.3d 603, quoting Aguilar , at p. 1029, 68 Cal.Rptr.2d 655, 945 P.2d 1204, italics added.) In other words, the capability prong turns on how someone could use the object to injure and can therefore be based on speculation. By contrast, the likelihood prong depends on how the defendant did use the object and therefore must be based on evidence in the record. It is the difference, for example, of swinging a nine iron at someone's head, or shoving someone in the shoulder with it. The club is certainly capable of causing severe injury, but only in the former example is it also likely to cause severe injury as used .
The added likelihood inquiry for everyday objects makes sense. While "all aggravated assaults are ultimately determined based on the force likely *337 to be applied against a person" ( Aguilar , supra , 16 Cal.4th at p. 1035, 68 Cal.Rptr.2d 655, 945 P.2d 1204, italics added), we infer or assume a likelihood of great bodily injury in the case of inherently dangerous weapons because they are specifically designed to inflict such injury. In other words, the mere use of a deadly weapon while attempting to injure someone is sufficient to constitute aggravated assault. The same is not true, however, for golf clubs, car keys, and other generally innocuous objects. For these, we must look to the specifics to determine whether the defendant's actions were culpable enough to warrant the harsher punishment aggravated assault carries. That additional, factual analysis is clear cut: Was the force with which the defendant used the object likely to produce death or great bodily injury? ( Ibid . )
B. The Record Contains No Evidence of Force "Likely to Produce" Great Bodily Injury
Regarding the first prong of the Aguilar test, a car key is unquestionably capable of producing great bodily injury, for example, if you use the pointed part to repeatedly pummel someone or stab at a vulnerable part of their body. Yet the majority spends most of their analysis on this completely obvious and uncontested point. They even survey out-of-state case law and self-defense websites to make it. (Maj. opn., ante , at pp. 681-82, fn. 3.) The result does not repay the effort. We're left where we started, knowing a car key could produce great bodily injury, but not knowing anything about how this defendant used this key.
The only question we have to answer on appeal is whether Koback actually used the key with force likely to produce death or great bodily injury. Here is the sum total of what we know about the key and the swing from trial. The key is one of the modern, electronic car keys, consisting of a round plastic fob and a wide metal shaft. The shaft is two inches long and tapers slightly to a rounded point. Unlike the older versions of car keys that tend to have sharp, jagged cuts, this key's cuts are smooth.[5] The victim and his two coworkers testified Koback stood between three and five feet away from them when he made a fist around the plastic fob so the shaft protruded from his knuckles. The victim said Koback then swiped "with force" at his torso. One of the coworkers described the motion "Pretty much as if [Koback]
*687 was throwing a punch." The swipe did not land-either because Koback was too far away or because one of the coworkers pulled the victim away in time. The victim said Koback "got scared and he left" immediately after swiping at him.
This evidence is even less meaningful than the testimony regarding force in Beasley , which the court determined was "far too cursory" to satisfy the *338 likelihood or force-used test under Aguilar . ( Beasley , supra , 105 Cal.App.4th at p. 1087, 130 Cal.Rptr.2d 717.) At trial, the victim testified the defendant had used the broomstick to "beat me like he never beat me before," and the prosecution submitted photographs of her bruised arms and shoulders to illustrate the extent of her injuries. ( Ibid. ) The court concluded that evidence was insufficient under Aguilar because the defendant had struck only non-vulnerable parts of the victim's body (her arms and shoulders) and because her testimony "did not describe the degree of force [he had] used in hitting her with the stick." ( Ibid . ) "The jury therefore had before it no facts from which it could assess the severity of the impact between the stick and [the victim's] body. ... [The] bruises on [her] shoulders and arms are insufficient to show [he] used the broomstick as a deadly weapon." ( Id. at p. 1088, 130 Cal.Rptr.2d 717, italics added.) In other words, without evidence about the degree of force used or evidence the defendant had targeted more vulnerable parts of the victim's body, such as her "head or face," the bruises, on their own, did not give the jury a basis to find the defendant had used the broomstick in a manner likely to produce death or grave injury. ( Id. at p. 1087, 130 Cal.Rptr.2d 717.)
The same is true here. The record is silent on the amount of force involved in the swipe because the victim did not describe it in sufficient-or any-detail. Moreover, unlike in Beasley , Koback's conduct did not result in physical contact, so we cannot try to discern the amount of force from evidence of the impact. (See, e.g., People v. Brown (2012) 210 Cal.App.4th 1, 7, 147 Cal.Rptr.3d 848 [the "nature" and "location" of injuries "are relevant facts for consideration in determining whether an object was used in a manner capable of producing and likely to produce great bodily injury"], italics added.)
The majority simply ignores Beasley as inconvenient precedent, when it should explain why its holding is not dispositive of our case. Instead, they attempt to supply the missing evidence of force through hypothetical, arguing: "[T]here is nothing in the record to suggest defendant would not have continued to swing the car key at [the victim] if he and the other men had not backed off, or that defendant would only have swung at [the victim's] torso and would not have swung for his face or neck." (Maj. opn., ante , at p. 681.) This speculation is completely irrelevant to the likelihood, or force-used, analysis. It demonstrates only that a key can be used to injure. If it were permissible to make up stories about how the object was used, the court would have done so in Beasley , upholding the conviction by reasoning there was "nothing in the record to suggest defendant would not have" continued to beat the victim with the broomstick and, say, poked her in the eye with it.
Perhaps more important-and surely more egregious-the majority's speculation that "there is nothing in the record to suggest" Koback would not *339 have swung more times misstates the evidence. The victim said Koback "got scared" after swiping at him and immediately fled. That testimony not only suggests but establishes that Koback would not have stuck around and launched a full scale attack on the employees. Moreover, contrary to what *688 the majority's violent and overblown hypothetical suggests, the fact he fled strongly suggests he was not trying to gravely injure the victim by swiping at him. It is much more likely he was trying only to gain distance from his pursuers-like he had a few minutes earlier in the Enterprise parking lot by threatening to "fuck [them] up" if they didn't back away. Notably, Koback also fled during that first encounter.
The majority tries to sidestep the lack of evidence of force by evoking an aura of dangerousness around the event. They recount the details of the employees' first encounter with Koback in the Enterprise parking lot in great and unnecessary detail, noting how close he stood to them, how he told them he'd "fuck [them] up" if they didn't back off, and how he seemed to be getting "angry and agitated." (Maj. opn., ante , at pp. 678-79.) None of these facts matters to the issue actually in dispute-whether he swung the key with force likely to produce great bodily injury during the second , later encounter in the motel parking lot. While his actions during the first encounter may provide circumstantial evidence of his state of mind during the second, his state of mind is not in dispute. It is uncontested he intended to assault the victim. The issue is whether that assault was simple or aggravated, based on the force he used in wielding the key. ( Aguilar , supra , 16 Cal.4th at p. 1035, 68 Cal.Rptr.2d 655, 945 P.2d 1204.)
"[T]he crime of assault has always focused on the nature of the act and not on the perpetrator's specific intent." ( People v. Williams (2001) 26 Cal.4th 779, 786, 111 Cal.Rptr.2d 114, 29 P.3d 197, italics added.) Thus, even if the jury could reasonably infer that, in his own mind, Koback had very much wanted to hurt the victim with his single swing, that doesn't change the fact the jury had no idea what kind of force was behind his single motion. Whether Koback was enraged or simply scared and desperate is immaterial because it doesn't tell us whether he swiped at the victim like Bruce Lee or a drunk. And the amount of force makes all the difference because Koback fled immediately after his single swipe and, as the photograph of the key shows, it is not sharp or jagged enough to cut skin with a single swipe unless wielded with extreme force. (Cf. People v. Lochtefeld (2000) 77 Cal.App.4th 533, 541, 91 Cal.Rptr.2d 778 [sufficient evidence to support finding pellet gun held to victim's head was capable of causing serious injury where expert testimony established it could "expel pellets at speeds in excess of those required to penetrate a significant distance into muscle tissue or to enter an eyeball"].) In other words, the jury may have had evidence of intent, but it did not have sufficient evidence of the nature of the act to convict Koback of aggravated assault.
*340 It should go without saying an appellate court may not fabricate the evidence to support a conviction when conducting a substantial evidence review. But that appears to be precisely what my colleagues are doing with their conjecture about what might have happened had Koback continued swinging. The majority also muses that we have no idea whether the victim's shirt was tucked in or whether he might have been wearing a second shirt underneath his company's polo shirt. (Maj. opn., ante , at p. 681.) True, there are many things we do not know about this incident, and anything is possible in a hypothetical. It's also possible Koback could have gravely injured the victim if he had shoved the key in his ear. But in reality, Koback did none of the things the majority mentions. He swung once at the victim's torso with unknown force , and fled. Whether he missed because he was too far away or because the victim was pulled aside is immaterial.
*689 So is whether the victim was wearing an extra layer of clothing. Answering those questions would shed no light on the forcefulness of the swipe.
I recognize that in cases like this, where the defendant does not make contact with the victim during the assault, some form of speculation about what might have (but didn't) happen is required to determine whether the defendant used force "likely to produce" great bodily harm under Aguilar . ( Aguilar , supra , 16 Cal.4th at p. 1029, 68 Cal.Rptr.2d 655, 945 P.2d 1204.) However, courts should limit their speculation to identifying the risk of injury posed by the defendant's actual conduct. They should not engage in speculation about what additional actions the defendant could have taken that would have increased the risk of injury.
In re D.T. (2015) 237 Cal.App.4th 693, 188 Cal.Rptr.3d 273 provides an example of appropriate speculation under Aguilar's likelihood test. In that case, a different panel of this court held the defendant's act of pressing the blade of a pocketknife into his classmate's back in the school hallway constituted force likely to produce great bodily injury. ( In re D.T. , at p. 701, 188 Cal.Rptr.3d 273.) They reached this conclusion by applying a risk analysis supported by evidence in the record. At trial, the investigating officer had testified she had seen similar knives cause severe and even fatal wounds and the victim had a red mark on her back from how hard the minor was pressing the knife to her.[1] ( Id. at p. 697, 188 Cal.Rptr.3d 273.) Based on this evidence, the court concluded it was probable that "a sudden distraction or misstep" would have "resulted in a serious puncture wound" to the victim's back. ( Id. at p. 701, 188 Cal.Rptr.3d 273.) This speculation was both limited to the risk of injury from the defendant's actions and supported by testimony about the nature of the object. In contrast, my colleagues' speculation is not limited to Koback's conduct-they have to *341 dream up additional things he could have done to be able to identify a risk of injury. This is improper speculation because it is not grounded in the record. Simply put, it is appropriate to speculate about hypothetical injuries from real actions ( In re D.T. ), but it is completely improper to speculate about hypothetical injuries from hypothetical actions, as the majority does here.
C. Simons Is Inapplicable
To uphold the conviction, the majority relies heavily on Simons , supra , 42 Cal.App.4th 1100, 50 Cal.Rptr.2d 351, a pre- Aguilar case that involves the distinct offense of exhibiting a deadly weapon to evade arrest. ( Pen. Code, § 417.8.) A person commits that offense by brandishing a dangerous object at a police officer with the intent "to use it as a weapon should the circumstances require." ( Simons , at p. 1107, 50 Cal.Rptr.2d 351.) In Simons , the defendant waived a screwdriver at a group of police officers in a menacing way while ordering them to "stay back," then threatened to stab the police dog with the screwdriver if they didn't go away. ( Id. at p. 1106, 50 Cal.Rptr.2d 351.) Only after throwing a chair at the defendant and "a brief struggle" were the officers able to disarm him. ( Ibid. ) The Simons court upheld the Penal Code section 417.8 conviction, concluding that a screwdriver was dangerous (if used to slash or stab) and *690 the evidence amply supported a finding the defendant intended to use it as a weapon to keep the officers and police dog at bay.
The majority concludes Simons is dispositive of our case, reasoning, "[i]f using a screwdriver to fend off police officers from a distance is an assault with a deadly weapon, then forcefully swinging or swiping a car key from a short distance is also an assault with a deadly weapon." (Maj. opn., ante , at p. 683.) First of all, the majority seems to have missed or forgotten that Simons is not an aggravated assault case, but putting that mischaracterization aside, their comparison is still inapt. What matters in a Penal Code section 417.8 case is the defendant's intent -that is, whether he or she brandished a dangerous object at a police officer as a means of evading arrest. In other words, Penal Code section 417.8 is concerned with protecting police officers from injury when making arrests and, as a result, punishes those who would exhibit a dangerous object during an arrest with the intent to use it if need be. As-used aggravated assaults, by contrast, depend entirely on the type of force used. A person is guilty of as-used aggravated assault only if they wield the typically innocuous object "in a manner likely to" cause serious harm. ( Aguilar , supra , 16 Cal.4th at p. 1029, 68 Cal.Rptr.2d 655, 945 P.2d 1204.) Simons therefore has no bearing on an as-used assault case like this one. The test we must apply is the one in Aguilar .
The source of the majority's mistake in relying on Simons appears to be People v. Page (2004) 123 Cal.App.4th 1466, 20 Cal.Rptr.3d 857 ( Page ). In *342 that case, a different panel of our court concluded the defendant committed as-used aggravated assault when she held the sharpened tip of a pencil to the victim's neck during a robbery and told him not to involve the police because she "knew where he lived." ( Id. at p. 1469, 20 Cal.Rptr.3d 857.) Like the majority does here, the Page court cites the two-part Aguilar test, but then applies the Simons test. The court upheld the aggravated assault conviction on the ground a sharpened pencil could be dangerous and the defendant's use of the pencil while threatening the victim during a robbery demonstrated she intended to use it as a weapon if need be . ( Page , at p. 1473, 20 Cal.Rptr.3d 857.)
As just explained, because exhibiting a deadly weapon to evade arrest does not require the use of force likely to inflict great bodily harm, the Simons test does not apply to as-used aggravated assaults. However, unlike here, the Page court's incorrect analysis did not result in an improper conviction. Had the court applied the Aguilar test instead of the Simons test, it could have properly concluded, like the court did in In re D.T. , that "a sudden distraction or misstep" likely would have "resulted in a serious puncture wound" to the victim's neck. In other words, it would have been reasonable for Page to conclude that grave injury is likely when one holds a sharp object to a vulnerable part of the body during a tense encounter like a robbery, when things can take a wrong turn at any given moment. Here, in contrast, we cannot say with any confidence that Koback's swinging motion threatened a similar risk of serious injury.
What our case boils down to is a single swipe of a car key at a person's clothed torso from a few feet away with unknown force. No other court has upheld an aggravated assault conviction on such scant evidence. A survey of the published cases where everyday items were found to have been used in a manner likely to kill or severely injure is illustrative of what an aberration this case is. In People v. Russell (1943) 59 Cal.App.2d 660, 139 P.2d 661, the defendant used a fingernail file to slash the *691 victim's face, causing a large gash requiring 11 stitches. In People v. White (1963) 212 Cal.App.2d 464, 28 Cal.Rptr. 67, the defendant bashed the victim's head with a rock, causing a two-inch gouge that penetrated "through all layers of the scalp ... to the bone." ( Id. at p. 465, 28 Cal.Rptr. 67.) In People v. Helms (1966) 242 Cal.App.2d 476, 51 Cal.Rptr. 484, the defendant smothered the victim's face with a pillow "for several minutes." ( Id. at p. 478, 51 Cal.Rptr. 484.) In People v. Richardson (1959) 176 Cal.App.2d 238, 1 Cal.Rptr. 306, the defendant repeatedly slashed the victim's face and head with a razor blade, causing cuts that required 25 to 30 sutures. In People v. Lee (1937) 23 Cal.App.2d 168, 72 P.2d 572, the defendant hit the victim "several times over the head" with a pipe. ( Id. at p. 169, 72 P.2d 572.)
I realize comparison to cases with stronger facts can be of limited value in a substantial evidence review, however I believe these cases demonstrate *343 what constitutes sufficient evidence of force in cases of aggravated assault with everyday objects . In each, the object was actually used in a manner likely to produce great bodily injury. And in most, the victims sustained injuries. Given Koback swung once at the victim's clothed torso, he would have had to use quite a great deal of force to produce death or great bodily injury with the key, and the trial testimony is simply insufficient to show he did.
I have found only one case where the everyday item held to have been used as a deadly weapon never made contact with the victim , and that case is easily distinguishable. In In re Jose R. (1982) 137 Cal.App.3d 269, 186 Cal.Rptr. 898, the defendant stuck a metal pin inside an apple and gave it to his teacher, but fortunately another student warned the teacher before she could eat it. ( Id. at p. 274, 186 Cal.Rptr. 898.) At trial, a medical expert testified about the severe injuries and infections that could have resulted from ingesting that particular pin. She also opined ingestion could have been fatal. ( Id. at p. 276, 186 Cal.Rptr. 898.) Based on that evidence, the court held the defendant had used the pin as a deadly weapon because, had the teacher ingested it as planned, she would have suffered grave injury. ( Ibid . ) Here, in contrast, the record contains no testimony about what could have happened had Koback's swing landed. Unlike ingesting a metal pin, which is sharp enough to draw blood upon slight contact, the type of the injury, if any, that would result from being hit in the midsection with a car key like Koback used depends entirely on the force behind the swing.
III
CONCLUSION
I cannot join an opinion that relies on inapplicable case law and hypothesizes factual scenarios not supported by the record to reach its result. Koback did not continue swiping the key at the victim and did not aim for his face or neck. He swung once at his torso from a few feet away. Because the record contains no evidence he did so with force "likely to produce" death or great bodily injury, he should not be guilty of assault with a deadly weapon. There is, however, sufficient evidence he committed the lesser included offense of simple assault, so I would reduce his conviction to that offense. ( Beasley , supra , 105 Cal.App.4th at p. 1088, 130 Cal.Rptr.2d 717.)

We reviewed the photograph of the key the prosecution submitted to the jury.

Arguably, the defendant in In re D.T. was guilty of assault with an inherently dangerous weapon, as the pocketknife was specifically designed to be sharp enough to cut through materials more resilient than skin, but the court treated the offense as an as-used aggravated assault.