Filed 10/15/13  In re G.W. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re G.W., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | E057608 |
| Plaintiff and Respondent, | (Super.Ct.No. INJ021478) |
| v. | OPINION |
| G.W., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Lawrence P. Best, Temporary Judge,* and William S. Lebov, Judge.† Affirmed.

Jan B. Norman, under appointment by the Court of Appeal, for Defendant and Appellant.

---

* Pursuant to California Constitution, article VI, section 21.

† Retired Judge of the Yolo Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

1

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Anthony Da Silva, Deputy Attorneys General, for Plaintiff and Respondent.

On September 19, 2012, the Riverside County District Attorney filed a Welfare and Institutions Code section 602 petition alleging that, on September 7, 2012, defendant and appellant G.W. (minor) resisted an executive officer (Pen. Code, § 69, paragraphs 1-3)[1] and made criminal threats (Pen. Code, § 422, paragraph 4). On October 23, 2012, a subsequent Welfare and Institutions Code section 602 petition was filed, alleging that on October 22, 2012, minor made criminal threats (Pen. Code, § 422, paragraph 1) and resisted a peace officer (Pen. Code, § 148, subd. (a)(1), paragraph 2). A juvenile court held a hearing on the two petitions on November 14, 2012. As to the first petition, the court found paragraphs 1 and 4 true.[2] As to the second petition, the court found paragraph 1 not true and dismissed paragraph 2. The court continued minor as a ward[3] and placed him on probation in his mother's custody.

On appeal, minor contends that there was insufficient evidence to support the court's true finding that he made criminal threats. We affirm the judgment.

---

[1] All further statutory references will be to the Penal Code, unless otherwise noted.

[2] The court found the allegation in paragraph 2 to be not true, and it dismissed the allegation in paragraph 3, upon the People's motion.

[3] Minor was already a ward of the court at the time the two petitions were filed.

## FACTUAL BACKGROUND

Officer Scott Adams was the traffic officer and school resource officer for the Palo Verde Unified School District. At 12:15 p.m. on September 7, 2012, he was on duty when he observed minor and his two friends commit a traffic violation by walking against a do not walk light at an intersection. Officer Adams recognized minor from previous contacts. Officer Adams activated the emergency lights and siren on his patrol car and pulled his car over. He had his driver's window down and advised minor and his friends to sit on the curb. Minor's friends complied, but minor did not. Officer Adams got out of his car, and minor faced him, threw his backpack on the ground, and cursed at him. Minor turned around and started walking away. Officer Adams told him to stop, but minor continued to walk about three to five feet. Officer Adams grabbed minor's right wrist, and minor spun around with his fist clenched. Officer Adams thought minor was going to strike him, so he spun minor's body to the right and forced him onto the hood of the patrol car. Minor began kicking backward and yelling, "Let me go." Police officers who were across the street responded to the location. Minor kicked Officer Adams at least six times. Officer Adams forced minor down to the sidewalk on his stomach and straddled him while minor continued to kick him. Another officer was able to secure minor's feet, and Officer Adams handcuffed him. Officer Adams then stood minor up against the patrol car and searched him for weapons. Students from the high school nearby rushed to see what was happening, and one of them told the officers to let minor go. When Officer Adams turned toward the approaching student, minor began spitting on his back. Officer Adams turned back around and attempted to secure minor's

3

feet, since minor also began kicking again. Another officer completed the search, and Officer Adams placed minor in the patrol car.

Officer Adams transported minor to the police station. During the ride there, minor was hitting his head against the center screen of the patrol car, and he said to Officer Adams that he could not wait until he "got out" because he was going to kill Officer Adams. Minor also let Officer Adams know that he and "his crew" knew where Officer Adams lived, and they were going to pay him and his family a visit. Minor further told Officer Adams that there was already "a hit out for [him.]" Officer Adams understood that statement to mean that there was "a death sentence already for [him]." This was not the first time minor had made these threats to him. When they arrived at the station, minor was still angry and was cursing at Officer Adams.

At trial, Officer Adams testified that he felt minor's threats were serious because he had personally arrested minor's associates for possession of firearms, handguns, and other weapons. Officer Adams therefore did not feel that minor's threats were "just kind of chatter." Prior to the current incident, Officer Adams had contact with minor at least six other times. He said minor had previously made a threat such as, "We'll piss on your grave after we get done visiting you."

## ANALYSIS

Minor contends that there was insufficient evidence to support the court's true finding that he made criminal threats. He argues that the prosecution did not prove all the elements of the crime since it failed to present evidence that Officer Adams experienced

4

sustained fear as a result of his threats.  Minor further asserts that sustaining the petition based upon insufficient evidence violated his due process rights.  We disagree.

A.  *Standard of Review*

"[I]n considering a claim of insufficiency of the evidence, appellant has a heavy burden in demonstrating that the evidence does not support the juvenile court findings.  [Citation.]  An appellate court must review the whole record in the light most favorable to the judgment in order to determine whether it discloses substantial evidence that a reasonable trier of fact could find the essential elements of the crime beyond a reasonable doubt.  [Citations.]"  (*In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1136 (*Ricky T.*).)  "We must presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence [citation] . . . ."  (*In re Jose R.* (1982) 137 Cal.App.3d 269, 275.)  In addition, "we must make all reasonable inferences that support the finding of the juvenile court.  [Citation.]"  (*Ibid.*)  "If the circumstances reasonably justify the verdict, we will not reverse simply because the evidence might reasonably support a contrary finding.  This standard applies to cases based on circumstantial evidence.  [Citation.]  The testimony of just one witness is enough to sustain a conviction, so long as that testimony is not inherently incredible.  [Citation.] "  (*In re Daniel G.* (2004) 120 Cal.App.4th 824, 830.)  In other words, "'[t]he test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact; it is not whether guilt is established beyond a reasonable doubt.  [Citation.]  [¶]  Before the judgment of the trial court can be set aside for insufficiency of the evidence . . . , it must clearly appear that *upon no hypothesis whatever* is there sufficient substantial evidence to support it.

5

[Citation.]' [Citations.]" (*In re Ryan N.* (2001) 92 Cal.App.4th 1359, 1372 (*Ryan N.*), italics added.)

B. *There Was Sufficient Evidence to Support the Court's Finding*

To prove a violation of section 422, the prosecution must show beyond a reasonable doubt the following: (1) defendant willfully threatened to commit a crime that, if committed, would result in death or great bodily injury to another person; (2) he made the threat with the specific intent that it be taken as a threat (whether or not he actually intended to carry out the threat); (3) the threat, on its face and under the circumstances in which it was made, was so unequivocal, unconditional, immediate, and specific as to convey to the person threatened a gravity of purpose and an immediate prospect of execution of the threat; (4) the threatening statement actually caused the other person to be in sustained fear of his or her own safety or for the safety of his or her immediate family; and (5) the threatened person's fear was reasonable under the circumstances. (§ 422; *People v. Toledo* (2001) 26 Cal.4th 221, 227-228; *Ricky T.*, *supra*, 87 Cal.App.4th at p. 1136; *People v. Butler* (2000) 85 Cal.App.4th 745, 753.)

A sustained fear includes both an objective and subjective component: the victim's fear "must have been reasonable, and it must have been real. [Citation.]" (*People v. Ortiz* (2002) 101 Cal.App.4th 410, 417 (*Ortiz*).) The parties' history can be considered as one of the relevant circumstances. (*People v. Mendoza* (1997) 59 Cal.App.4th 1333, 1340, superseded by statute on other grounds as stated in *People v. Franz* (2001) 88 Cal.App.4th 1426, 1442.)

6

In *Ortiz, supra*, 101 Cal.App.4th 410, the victim was confronted at a gas station by the defendant, who said he had a gun. (*Id*. at p. 413.) The defendant got into the victim's car and drove off with the victim. The defendant said he would kill the victim if he looked his way or tried to do anything. (*Ibid*.) As they drove, the defendant demanded the victim's wallet, and the victim gave it to him. (*Ibid*.) The defendant repeated his earlier threat to the victim and added that his friends were behind them, and they could also kill him. (*Ibid*.) The defendant said he knew where the victim lived. (*Ibid*.) At trial, the People argued that the defendant made a terrorist threat when he told the victim, "'we're going to kill you and we're going to put you in the trunk.'" (*Id*. at p. 416.) A jury convicted the defendant of making a terrorist threat (§ 422), along with other crimes. (*Id*. at p. 414.) On appeal, the defendant argued that there was insufficient evidence to support his conviction since there was no evidence that his statement frightened the victim. (*Id*. at pp. 416-417.) However, the court concluded that the objective component of sustained fear was met, in that "an average reasonable person would be fearful if a carjacker threatened to kill the person and stuff him in the trunk." (*Id*. at p. 417.) Furthermore, although the victim never testified that the defendant's statement put him in actual fear—the subjective component—the court nevertheless concluded that "the only reasonable inference from the evidence is [the victim] had such fear." (*Ibid*.)

In the instant case, minor argues that the prosecution failed to establish that Officer Adams sustained any fear. He asserts that Officer Adams did not testify that he was afraid, and there was insufficient evidence presented to show that any fear on Officer Adams's part was reasonable under the circumstances. Minor attempts to minimize the

significance of his threats by pointing out that he was handcuffed in the backseat of the patrol car when he made them, there was no evidence that he or his associates had used weapons against Officer Adams, there was no evidence that he or his associates had ever committed violent crimes, and there was no evidence that the prior threats had been carried out.

First, we conclude that the objective component of the sustained fear element was met in that an average reasonable person would be fearful if someone threatened to kill him, said he and "his crew" knew where the person lived, threatened to pay him and his family a visit, and said there was already a hit out for him. (See *Ortiz*, *supra*, 101 Cal.App.4th at p. 417.) As to the subjective component, minor asserts that Officer Adams did not testify that he was afraid. However, just as in *Ortiz*, such testimony was not necessary for a finding of sustained fear. (*Ibid.*) A court can reasonably infer from other evidence that the victim had such fear. (*Ibid.*) Although minor claims that his threats were "nothing more than [an] angry teenager mouthing off," Officer Adams did not view them that way. When asked if he felt that minor's statements were "just kind of chatter," Officer Adams said, "No." Rather, he believed minor's threats because he had previously arrested minor's associates for possession of firearms and other weapons. Moreover, minor and his associates had made death threats to Officer Adams before. Officer Adams's knowledge of minor's prior conduct was relevant in establishing that he was in sustained fear. (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156.) In light of Officer Adams's past contacts with minor, minor's obvious disrespect and disdain for him, minor's repeated death threats, and Officer Adams's knowledge that minor's

8

associates possessed weapons in the past, it is reasonable to infer that Officer Adams had sustained fear.

Minor relies upon *Ricky T.*, *supra*, 87 Cal.App.4th 1132 and *In re Sylvester C.* (2006) 137 Cal.App.4th 601 (*Sylvester C.*) in support of his position. However, both cases are distinguishable. *Ricky T.* involved a student who left a classroom to use the restroom. Upon return, the classroom door was locked, so he pounded on it. The teacher opened the door, and the door hit the student in the head. (*Ricky T.*, at p. 1135.) The student became angry and told the teacher, "'I'm going to get you,'" and "'I'm going to kick your [a--].'" (*Id.* at p. 1135-1136.) When a police officer interviewed the student, the student admitted speaking angrily, but said he did not mean to sound threatening. (*Id.* at p. 1135.) He apologized for the incident. (*Ibid.*) The court found that the student's remark that he was "'going to get [the teacher]'" was ambiguous and "no more than a vague threat of retaliation without prospect of execution." (*Id.* at p. 1138.) The court found that the student's "'kick your [a--]'" statement was simply made in response to his accident with the door. (*Ibid.*) The court further noted that there was no evidence that the student and the teacher had any prior history of disagreements. (*Ibid.*) The court concluded there was nothing in the record to support a finding of sustained fear and noted that the student's "statement was an emotional response to an accident rather than a death threat that induced sustained fear." (*Id.* at p. 1141.) Unlike the student in *Ricky T.*, minor here made repeated death threats to Officer Adams, and he threatened his family. Moreover, there was a history of negative contacts between minor and Officer Adams, and Officer Adams knew that minor's associates had possessed weapons in the past.

9

In *Sylvester C.*, *supra*, 137 Cal.App.4th 601, the minor threatened to kill several people, including a parking attendant who did not testify at trial. (*Id*. at p. 604.) The appellate court found that the prosecution had failed to prove that the victim experienced sustained fear upon hearing a threat from the minor. (*Id*. at pp. 606-607.) The court noted that the failure of proof came from the absence of the victim from the trial. (*Id*. at p. 607.) Thus, there was no evidence *from him* about his state of mind upon hearing the threat. (*Ibid*.) Unlike *Sylvester C.*, the victim in the instant case appeared at trial and testified regarding how he felt when threatened by minor.

Viewing the evidence in the light most favorable to the judgment, as we must, we conclude that the evidence was sufficient to show that minor's threats caused Officer Adams to be in sustained fear, and his fear was reasonable under the circumstances. Even though the circumstances "'might also be reasonably reconciled with a contrary finding,'" reversal is not warranted since "'the circumstances reasonably justify the trial court's finding[].'" (*Ryan N.*, *supra*, 92 Cal.App.4th at p. 1372.) Accordingly, we further conclude that there was no due process violation.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


HOLLENHORST
J.


We concur:


RAMIREZ
P. J.


KING
J.


11