Filed 3/27/14  P. v. Muriel CA3

## <u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C073832 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F08168) |
| v. | |
| LOUIS ENRIQUE MURIEL, | |
| Defendant and Appellant. | |

A jury convicted defendant Louis Enrique Muriel of assault with a deadly weapon against a peace officer (count one), evading a peace officer while driving a car recklessly (count four), and two counts of misdemeanor simple assault against a peace officer. (Pen. Code, § 245, subd. (c);[1] Veh. Code, § 2800.2, subd. (a); Pen. Code, § 241, subd. (c), respectively.)

---

[1] Undesignated statutory references are to the Penal Code.

1

Sentenced to a state prison term of seven years eight months, defendant principally asserts on appeal (1) there was insufficient evidence to support the assault conviction of count one; and the trial court erred (2) by imposing the upper term on that conviction, (3) by not staying the sentence on the evading conviction under section 654 (count four), and (4) in calculating defendant's presentence custody credit under section 2933.1.

We agree the trial court erred by not staying the sentence under section 654 on the evasion conviction (count four) and in calculating defendant's presentence custody credits but we reject defendant's other challenges. Therefore, we affirm defendant's convictions but direct the trial court to award a total of 316 days of presentence custody credit and to stay the eight-month consecutive sentence for evading a peace officer (count four).

## FACTUAL AND PROCEDURAL BACKGROUND

On December 10, 2012, at approximately 11:00 p.m., Sergeant Timothy Wetzel, a field supervisor for the Sacramento County Sheriff's Department, observed defendant and another individual get into a 1998 Ford Taurus (the Taurus) parked in a shopping center parking lot. Wetzel observed the Taurus leave the shopping center at a high rate of speed, rolling through a stop sign on the way out.

Sergeant Wetzel followed the Taurus and observed the car roll through a second stop sign. Wetzel activated his overhead lights to stop the Taurus, which accelerated through another stop sign. Wetzel activated his siren and radioed dispatch that he was in pursuit. Defendant claimed he fled because he knew he had a warrant pending and he did not want to go to jail.

Shortly after the pursuit began, the Taurus came to a sudden stop. Sergeant Wetzel stopped his patrol car approximately a car length and a half behind the Taurus and

2

began shifting the transmission into park. Wetzel noticed the Taurus's reverse lights come on; the Taurus then sped backwards towards Wetzel's patrol car.

Sergeant Wetzel put his patrol car in reverse and backed up a foot or two before the Taurus struck. The collision was "jolting," but did not cause the airbags in Wetzel's car to deploy. Defendant claimed he was attempting to deploy the airbags in Wetzel's vehicle to assist his escape.

After the collision, defendant fled once again and Sergeant Wetzel pursued, joined shortly thereafter by Deputies Nathan Burnette and Jon Burton. After Burton joined the pursuit, Wetzel conducted a pursuit intervention technique (PIT maneuver),[2] which caused the Taurus to spin 180 degrees but not stall. Then the Taurus accelerated forward and collided with Burton's patrol vehicle. Defendant testified he was not trying to hit the patrol car; he was just trying to get away. Shortly afterwards, Burnette conducted a second PIT maneuver, causing the Taurus to spin, but again, not stall. The Taurus then accelerated forward and collided once more with Burton's patrol car. Defendant testified he was trying to regain control from the PIT maneuver and did not intend to hit Burton's patrol car. At that point, Burnette used his patrol car to strike the Taurus, and defendant surrendered.

Defendant was charged with three counts of assault on a peace officer with a deadly weapon, and one count of evading a peace officer while driving recklessly. Without objection from the People, the trial court instructed the jury on both felony assault with a deadly weapon on a peace officer and the lesser included offense of misdemeanor simple assault on a peace officer.

---

[2] During a PIT maneuver, a patrol car taps the rear side of the subject vehicle, which spins the vehicle and stalls its engine.

3

The jury convicted defendant of felony assault with a deadly weapon on a peace officer for count one, and misdemeanor simple assault on a peace officer for counts two and three. For count four, the jury convicted defendant of felony evading a peace officer by driving recklessly.

The trial court sentenced defendant to a prison term of seven years eight months: five years for the felony assault conviction (count one), eight months for the evading conviction (count four), and two years for prior prison terms.

## DISCUSSION

### I. Sufficient Evidence Supports the Count One Conviction of Assault with a Deadly Weapon on a Peace Officer

Defendant contends the evidence is insufficient to support the assault conviction of count one. (§ 245, subd. (c).) Specifically, defendant claims there is insufficient evidence that he used his vehicle, as the offense requires, in a manner capable of and likely to cause great bodily injury when backing into Sergeant Wetzel's patrol car, given the close distance between his Taurus and Wetzel's patrol car. We disagree.

When confronted with a challenge to the sufficiency of evidence, we "must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)

#### A. *Governing Law on Assault with a Deadly Weapon on a Peace Officer*

A person commits an assault with a deadly weapon on a peace officer under section 245, subdivision (c), as pertinent here, if that person, "commits an assault with a deadly weapon or instrument, other than a firearm . . . , and . . . knows or reasonably should know that the victim is a peace officer . . . engaged in the performance of his . . . duties, when the peace officer . . . is engaged in the performance of his . . . duties . . . ."

4

As used in section 245, "a 'deadly weapon' is 'any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury.' " (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028-1029; *People v. Brown* (2012) 210 Cal.App.4th 1, 6 (*Brown*).) "Great bodily injury, as used in section 245, means significant or substantial injury." (*Brown*, *supra*, 210 Cal.App.4th at p. 7.) A section 245 conviction "does not require proof that an injury occurred." (*In re Jose R.* (1982) 137 Cal.App.3d 269, 275.) "In determining whether an object not inherently deadly or dangerous is used as such, the trier of fact may consider the nature of the object, the manner in which it is used, and all other facts relevant to the issue." (*People v. Aguilar*, *supra*, 16 Cal.4th at p. 1029; see *People v. Fuqua* (1881) 58 Cal. 245, 247.)

### B. Sufficient Evidence Supports the Jury's Conviction on Count One

There was sufficient evidence supporting the jury's conviction of assault with a deadly weapon on a peace officer (count one). There was evidence that Sergeant Wetzel parked his patrol car approximately "a car length and a half" behind the Taurus and that the Taurus "sped backwards" towards Wetzel's car before Wetzel shifted his car and reversed. There was also evidence that the collision between the Taurus and Wetzel's patrol car was "jolting." Although the airbags in Wetzel's patrol car did not deploy, a jury reasonably could have concluded that a jolting vehicular impact could cause significant or substantial injuries. Wetzel's lack of injury is of no help to defendant because section 245 does not require proof of an actual injury. (*In re Jose R.*, *supra*, 137 Cal.App.3d at p. 275.) Finally, the video footage recorded by Wetzel's in-car camera was also shown to the jury. After seeing the Taurus reverse into Wetzel's patrol car, a trier of fact could have reasonably inferred that the collision was capable of producing and likely to produce great bodily injury.

Defendant relies on *Brown*, *supra*, 210 Cal.App.4th 1 in arguing his Taurus was not likely to produce death or great bodily injury to Sergeant Wetzel because of the close distance between the vehicles. We disagree.

In *Brown*, the defendant was convicted of assault with a deadly weapon and claimed on appeal that the weapon used—a BB gun—was not a deadly weapon. (*Brown*, *supra*, 210 Cal.App.4th at pp. 5, 7.) The court in *Brown* disagreed. (*Id.* at p. 8.) The defendant in *Brown* had driven up alongside two individuals who were standing on the sidewalk and fired the BB gun at them, hitting one of the individuals in the foot and the other individual two times in the back. (*Ibid.*) The individuals did not seek medical attention. (*Ibid.*) The court in *Brown* noted that the defendant shot the victims from only five feet away, and that "the jury could have reasonably inferred the location and severity of their injuries were fortuitous: Had [the victims] not thrown themselves on the ground for cover, they just as easily could have been hit in the face, causing serious injury." (*Ibid.*)

Here, the jury could have reasonably inferred that the lack of any damage to the patrol car and the lack of any injuries sustained by Sergeant Wetzel were fortuitous: Had Wetzel not mitigated the impact of the collision by backing his car up before being hit by the Taurus, the impact just as easily could have been harder, causing serious injury. There was evidence showing that Wetzel shifted into reverse and backed up a foot or two before defendant's Taurus struck Wetzel's patrol car with a jolting impact. After reviewing the record, we find there was sufficient evidence supporting the jury's conviction of assault (count one).

In an accompanying argument, defendant claims his due process rights were violated based on this alleged evidentiary insufficiency. Because we have found the evidence sufficient, defendant's due process rights have not been violated.

6

## II. Upper Term Sentence on the Assault Conviction (Count One)

Defendant contends the trial court improperly imposed the upper term sentence of five years on the assault conviction. Defendant claims the trial court believed that defendant should have been convicted of felony assault on peace officers for counts two and three as well, rather than misdemeanor simple assault, so the trial court imposed the upper term sentence on the felony assault (count one) because the court rejected the jury's verdicts. We disagree.

Under section 1170, subdivision (b), in relevant part, "[w]hen a judgment of imprisonment is to be imposed and the statute specifies three possible terms [upper, middle, and lower], the choice of the appropriate term shall rest within the sound discretion of the court. . . . In determining the appropriate term, the court may consider the record in the case, the probation officer's report, other reports, . . . and statements in aggravation or mitigation submitted by the prosecution, the defendant, or the victim, . . . and any further evidence introduced at the sentencing hearing. The court shall select the term which, in the court's discretion, best serves the interests of justice." We review the trial court's choice of sentence term under the abuse of discretion standard. (*People v. Carmony* (2004) 33 Cal.4th 367, 376-377.)

We cannot say the trial court abused its discretion in imposing the upper term on the felony assault conviction (count one). The trial court based this sentence "in large part" on defendant's extensive criminal record, which the court recited, and noted that "[defendant] doesn't do well when he is not in custody. He continually victimizes people, commits crimes, and uses methamphetamine. [¶] I am going to sentence him to the maximum time to protect society." The trial court added that the upper term was imposed due to defendant's "excessive criminality and the extreme recklessness with which he drove the vehicle in that eight-and-a-half-mile pursuit at speeds which, as I

7

recall the testimony, pursuing officers were going over 90 miles an hour chasing him at some point."

Although the trial court remarked on defendant's "big break" in this case[3] and how a person under the evidence here could be found guilty of three felony assaults on a peace officer, the trial court, prior to these remarks, had delineated defendant's extensive criminal record, stated that this record "in large part" formed the sentence imposed here, and stated it (the court) was sentencing defendant to "the maximum time to protect society." We find the trial court did not abuse its discretion by imposing the upper term sentence on the single felony assault conviction (count one).

In an accompanying argument, defendant contends that by imposing the upper term sentence on the felony assault conviction (count one), the trial court substituted its view of guilt or innocence for the jury's findings, depriving defendant of his Sixth Amendment right to have the jury decide this matter and his Fourteenth Amendment right to due process of law. For the reasons just expressed, we disagree.

### III. Sentence for Evading Conviction (Count Four)

Defendant argues the trial court should have stayed the sentence for the evading conviction (count four) under section 654 because that offense was not a separate and distinct act from the assaults on the officers (counts one, two, and three). We agree. There is no substantial evidence from which the trial court could have concluded that defendant harbored a different intent and objective when committing the assault crimes and the evasion crime. As such, defendant's eight-month sentence for the evasion conviction must be stayed under section 654.

---

[3] The trial court stated it should not have instructed on "the lesser included option of a misdemeanor assault [for] the felony assault on a peace officer."

8

### A. *Governing Law on Multiple Punishment*

Section 654 provides, "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. . . ." (§ 654, subd. (a).) The purpose of section 654 "is to insure that a defendant's punishment [is] commensurate with his culpability." (*People v. Perez* (1979) 23 Cal.3d 545, 550-551.) Section 654 "has been interpreted to apply not only to individual criminal acts, but also to [indivisible] courses of conduct that are motivated by a single intent or objective." (*People v. Pearson* (1986) 42 Cal.3d 351, 359.)

When determining whether a course of conduct is punishable under more than one provision of law, "[i]t is defendant's intent and objective, not the temporal proximity of his offenses, which determine whether the transaction is indivisible. [Citations.] We have traditionally observed that if all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once." (*People v. Harrison* (1989) 48 Cal.3d 321, 335; see *People v. Liu* (1996) 46 Cal.App.4th 1119, 1135-1136.) Where two convictions share the same intent and objective, the proper procedure is to stay the execution of the sentence of the lesser offense. (*People v. Pearson*, *supra*, 42 Cal.3d at pp. 359-361.) We uphold a trial court's factual finding, express or implied, that a defendant had multiple independent criminal objectives, if that finding is supported by substantial evidence. (*People v. Porter* (1987) 194 Cal.App.3d 34, 38.)

### B. *There Was Insufficient Evidence to Support a Finding that the Evading Crime Was Separate and Distinct from the Assaults*

The trial court concluded that the offense of "evading a peace officer by driving in a reckless manner" was "a separate and distinct crime from the assaults," and

consequently sentenced defendant to an eight-month consecutive term for the evasion offense.

The People argue that substantial evidence supports the trial court's conclusion. The People rely on *People v. Trotter* (1992) 7 Cal.App.4th 363 (*Trotter*). In *Trotter*, the defendant, while fleeing in a stolen car, fired three separate gunshots at a pursuing officer's patrol car. (*Id.* at p. 365.) The defendant claimed he fired each shot at the officer to avoid apprehension. (*Id.* at p. 366.) As pertinent here, the defendant in *Trotter* was convicted of evading a peace officer with willful and wanton disregard for the safety of others, and three counts of assault on a peace officer with a firearm. (*Id.* at p. 365.)

On appeal, the defendant in *Trotter* argued that he should not have been sentenced separately for all three assaults because, under section 654, "they were 'part and parcel' of a single course of conduct and were incidental to one objective." (*Trotter*, *supra*, 7 Cal.App.4th at p. 366.) The appellate court disagreed, finding there were three separate acts of assault, not a single act " 'made punishable in different ways by different provisions of [the Penal Code]. . . .' " (*Id.* at p. 368.) The *Trotter* court observed that the defendant pointed his gun at the police car that was following him and fired one shot, then resumed driving for about a minute and turned back and shot again, and then a few seconds later fired a third shot. (*Ibid.*) The court noted that each shot required a separate trigger pull, and each shot was separated by periods during which the defendant had time to reflect and consider his next action. (*Ibid.*) The court in *Trotter* concluded that the three shots did not constitute a single course of conduct for section 654 purposes under the intent and objective test because "[d]efendant's conduct became more egregious with each successive shot" and "each shot evinced a separate intent to do violence." (*Ibid.*)

10

*Trotter*, however, is distinguishable from the present case. Here, the offense that is the subject of section 654 is the evasion offense, rather than the three assault offenses, and there is no evidence the evasion offense was separate from the assault offenses.[4]

Regarding the first assault (the felony assault on Sergeant Wetzel (count one)), defendant testified he was only trying to disable Wetzel's vehicle so he could evade the officer. Wetzel acknowledged it was not unusual for fleeing suspects to try to disable patrol cars by deploying their airbags. In closing argument, the prosecution stated, "Nothing was going to stop [defendant] from getting away from the police officers. He was going to get away, whatever the cost . . . ."

Regarding the second assault (the first misdemeanor assault on Officer Burton (count two)), defendant testified he was "just trying to get away" and "didn't want to hit a law enforcement vehicle." In closing argument, the prosecution stated, "Nothing was going to stop [defendant] so he pushed forward. He accelerated forward. It didn't matter that there were cars in his way, that there were police cars in his way. [¶] That clearly wasn't a bother to him so he pushed forward, hitting Deputy Burton's car."

Regarding the third assault (the second misdemeanor assault on Officer Burton (count three)), defendant testified he "was just trying to go forward" and that he was not trying to hurt any officer. The prosecution stated in closing argument, "He was trying to go through Deputy Burton's police car. He was going to get away. Nothing was going to stop him. He had one goal . . . to get away."

In rebuttal argument, the prosecution again emphasized, "defendant was going to get away. . . . He was using his car like a plow. Everything in the way was going to be

---

[4] Indeed, in *Trotter*, the defendant's sentence on his evasion conviction was stayed under section 654. (*Trotter*, *supra*, 7 Cal.App.4th at p. 365.)

moved out by his force. That was his goal. He was going to do what needed to happen to get away."

Defendant's goal was to get away from the pursuing officers and he committed three separate assaults trying to do so; however, his evasion—his attempt to get away—was not a separate act from those assaults. Accordingly, section 654 applies to the evasion conviction, and the eight-month sentence for that offense must be stayed. As in *Trotter*, defendant's separate sentences for his three assaults, including misdemeanor jail sentences for counts two and three, were properly imposed.

## IV. Presentence Custody Conduct Credits

Defendant contends the trial court should not have applied the 15 percent custody conduct credit limitation of section 2933.1 for a "violent felony" because his conviction for assault with a deadly weapon (other than a firearm) on a peace officer (count one— § 245, subd. (c)) is not defined as a "violent felony." (§§ 2933.1, subd. (a), 667.5, subd. (c).) The People concede the point. We agree.

Under section 2933, subdivision (b), a prisoner may be awarded a day of credit against his sentence for every day of incarceration. Having spent 158 days in presentence custody while behaving himself, defendant is entitled to an additional 158 days of conduct credit—rather than the 23 days of conduct credit awarded at 15 percent—for a total of 316 days of presentence custody credit.

## DISPOSITION

The convictions are affirmed but we direct the trial court to award defendant a total of 316 days of presentence custody credit pursuant to section 2933, subdivision (b) (comprised of 158 days of actual presentence custody and 158 days of conduct credit), to stay under section 654 the eight-month consecutive sentence for the evasion conviction (count four), to amend the abstract of judgment to reflect this, and to send a certified copy

12

of the amended abstract to the Department of Corrections and Rehabilitation.  As so modified, the judgment is affirmed.


                                                    _____BUTZ_____, J.


We concur:


_____NICHOLSON_____, Acting P. J.


_____MAURO_____, J.