Filed 5/31/13  P. v. Logan CA1/4
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JEROME LOGAN,<br><br>        Defendant and Appellant. | A134389<br><br>(Contra Costa County<br>Super. Ct. No. 1107515) |
| In re JEROME LOGAN,<br><br>        on Habeas Corpus. | A137892 & A137962 |

## I.

### INTRODUCTION

A jury convicted appellant Jerome Logan of four counts of second degree robbery (Pen. Code, §§ 211, 212.5, subd. (c)).[1]  The jury also found true two out of four enhancement allegations alleging that appellant had personally used a dangerous or deadly weapon, pepper spray, in the commission of the robberies (§ 12022, subd. (b)(1)).  In this appeal, appellant argues that the two enhancement allegations must be reversed because the evidence does not support the jury's finding that pepper spray was a dangerous or deadly weapon capable of inflicting great bodily injury.  Finding no merit to this contention, we affirm the judgment.

---

[1]  All statutory references are to the Penal Code.

1

After this appeal was fully briefed, appellant filed two handwritten petitions for writs of habeas corpus in propria persona, seeking to raise additional issues not raised by his counsel on appeal. On our own motion, we order the petitions (A137892 & A137962) consolidated with the appeal (A134389) for purposes of resolution by a single opinion. We deny the petitions because appellant has failed to make a prima facie case that he is entitled to relief.

## II.

## FACTS

On November 24, 2010, and again on December 3, 2010, a Black male wearing a black coat with a hood and aviator sunglasses entered Coach stores in Concord (the November 24th incident) and in Walnut Creek (the December 3d incident) and brazenly started shoving Coach handbags that were on display into a black plastic garbage bag. During each incident, he held something in his hand that resembled a can of pepper spray, which he held up as a warning to anyone who started to come too close. Witnesses to both robberies saw the perpetrator leave in a burgundy-colored truck/SUV. The vehicle, which had a distinctive tow hitch, was recorded on a surveillance camera and a photograph was distributed to Bay Area law enforcement agencies.

An officer saw a vehicle that matched the description and photograph of the vehicle involved in the robberies. The officer obtained the vehicle's license plate number. That license plate number was registered to a 1996 GMC Yukon belonging to appellant. A photo lineup was created that included appellant's photo. Three of the four Coach store employees who were working when the robberies took place picked appellant's photo out of a six-person photo lineup.

A jury trial was held and appellant was convicted of four counts of second degree robbery. The jury found an allegation that appellant used a deadly or dangerous weapon in the commission of the offense—the canister of pepper spray—to be true as to two of the four robbery counts. The evidentiary distinction supporting the true finding was that the employees named in these counts each came within three to six feet of appellant during the robbery while the other employees kept their distance.

2

On December 9, 2011, the trial court sentenced appellant to five years four months in prison.

## III.

## DISCUSSION

### A. Sufficiency of the Evidence

Appellant raises a single contention on appeal—that the evidence is insufficient to support the two weapon use enhancements under section 12022, subdivision (b)(1) because pepper spray was not proven to be a dangerous or deadly weapon capable of inflicting great bodily injury. We disagree.

We review the record in the light most favorable to the judgment and presume in support of the judgment the existence of every fact the jury could reasonably deduce from the evidence. (*People v. Young* (2005) 34 Cal.4th 1149, 1175.) Our inquiry is directed to whether any rational trier of fact could have found the elements of the enhancement beyond a reasonable doubt. (*Ibid.*) We do not resolve credibility issues or evidentiary conflicts, because that is the exclusive province of the trier of fact. (*People v. Martinez* (2003) 113 Cal.App.4th 400, 412.) Reversal is not warranted unless it appears " 'that upon no hypothesis whatever is there sufficient substantial evidence' " to support the true finding. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

Section 12022, subdivision (b)(1) provides: "Any person who personally uses a *deadly or dangerous weapon* in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for one year, unless use of a deadly or dangerous weapon is an element of that offense." (Italics added.) A true finding under this section requires proof that " 'during the crime or attempted crime, the defendant himself or herself intentionally displayed in a menacing manner or struck someone with an instrument capable of inflicting great bodily injury or death . . . .' " (*People v. Blake* (2004) 117 Cal.App.4th 543, 555, fn. omitted (*Blake*).)

Case law defines a "deadly or dangerous weapon" as used in section 12022, subdivision (b)(1), as " 'an instrument capable of inflicting great bodily injury or

3

death,' " and "great bodily injury" as " 'injury which is significant or substantial, not insignificant, trivial or moderate.' " (*Blake*, *supra*, 117 Cal.App.4th at pp. 555-556, fns. omitted.) In determining whether an object is a dangerous or deadly weapon in the context of section 12022, subdivision (b)(1), the trier of fact may look to the nature of the object, the manner of its use, and any other relevant fact. (*Blake*, at p. 555; see generally *People v. Page* (2004) 123 Cal.App.4th 1466, 1471 (*Page*).)

In *Blake*, for example, the court concluded that a jury reasonably could have found that pepper spray was a "dangerous weapon" and that it was used in such a way that it was capable of causing serious bodily injury. (*Blake*, *supra*, 117 Cal.App.4th at p. 559.) The evidence in *Blake* showed that the defendant had sprayed a substance that two robbery victims believed to be pepper spray directly into their eyes. (*Id.* at pp. 547, 555.) He produced a canister and threatened to "mace" a third victim, convincing the victim to hand over his money (count 6). (*Id.* at pp. 547-548, 555.) The court found that evidence that the victims who were sprayed suffered substantial, though transitory, respiratory distress, burning sensations, and blindness demonstrated that the chemical spray could, and did, inflict serious bodily injury. (*Id.* at p. 559.) As to the third victim who was threatened with the pepper strayed but not actually sprayed (count 6), the jury convicted the defendant of robbery while using a dangerous or deadly weapon. (*Id.* at p. 555.) Surveying out-of-state cases involving the use of pepper spray, the *Blake* court observed, "it takes little imagination to picture the more serious injuries these victims were fortunate to escape, such as burns, chemical pneumonia, cornea damage or serious asthma attacks." (*Id.* at p. 559.) The court believed the evidence supported the conclusion that "appellant intended to, and did, use the chemical spray to immobilize and temporarily disable his victims in order to escape with the loot. Evidence of these circumstances in combination supports the jury's reasonable deduction appellant used the chemical spray as a dangerous weapon in committing the robberies. (*Ibid.*)

Appellant claims the evidence here, unlike the evidence in *Blake*, was insufficient to support a finding that the pepper spray possessed by appellant during the robberies was a deadly and dangerous weapon capable of causing great bodily injury. Appellant claims

"[t]here is a crucial difference between the *Blake* case and this one: in *Blake*, the perpetrator actually sprayed the pepper spray right into the faces of two shopkeepers," while in this case, the evidence showed the pepper spray "was not used, but only brandished . . . ." He claims that "in this case, there is insufficient evidence that pepper spray, when brandished but not detonated, is capable of 'significant' or 'substantial' injury . . . ."

There are several problems with appellant's argument. In the first place, appellant ignores the fact that the *Blake* court upheld a conviction in a situation that closely parallels the one before us, where the pepper spray was merely displayed, but did not actually used, in the perpetration of the robbery (count 6). (*Blake*, *supra*, 117 Cal.App.4th at pp. 547-548; 555.) Also, the focus of our inquiry is upon the reasonable potential or capability of the weapon to inflict great bodily injury or death, not whether the injury that was actually inflicted. (See *People v. Pollock* (2004) 32 Cal.4th 1153, 1178; *People v. Savedra* (1993) 15 Cal.App.4th 738, 744-745; *Page*, *supra*, 123 Cal.App.4th at p. 1472 ["an instrument can be a deadly weapon even if it is not actually used with deadly force"].)

There is sufficient evidence in this case to suggest that if the victims had attempted to interfere with appellant as he was stashing handbags into the garbage bag, he was prepared to use pepper spray to temporarily incapacitate them. Moreover, the jury heard testimony concerning pepper spray and its ability to inflict great bodily injury within the meaning of the statute. (See *People v. Brown* (2012) 210 Cal.App.4th 1, 8.) Steve Bertolozzi, a Walnut Creek police detective, testified that he has been training police officers for approximately 20 years, including how to use pepper spray. He testified that pepper spray causes the mucous membranes to inflame. A person who is sprayed will have a burning sensation in the eyes and will feel as if he or she is unable to breathe. Pepper spray can incapacitate a person. It can make the person feel incapable of functioning. A person who is sprayed will buckle over at the waist, unable to see and struggling to breathe.

Appellant emphasizes that Detective Bertolozzi also testified he did not believe pepper spray was capable of inflicting "significant injury." However, the court's instructions and the parties arguments made it clear that it was the jury who was to make the ultimate determination whether the pepper spray used to commit the robberies in this case was capable of inflicting great bodily injury. (See *Blake*, *supra*, 117 Cal.App.4th at p. 559, fn. omitted ["Whether appellant used the spray as a dangerous weapon capable of inflicting great bodily injury was a question for the jury to decide"].) From the jury's decision, it is obvious the jury disregarded Detective Bertolozzi's lay opinion on this point, something they were entitled to do. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 890 [jury is free to reject uncontradicted testimony of a witness and draw its own inferences from the facts]; *Conservatorship of McKeown* (1994) 25 Cal.App.4th 502, 509 [same]; *Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 632-633 [same].) Under these circumstances, there is substantial evidence from which a jury could reasonably find that the pepper spray used by appellant in the perpetration of these robberies was a deadly or dangerous weapon that was capable of causing great bodily injury.

### B. Habeas Corpus Petitions

"When presented with a petition for a writ of habeas corpus, a court must first determine whether the petition states a prima facie case for relief—that is, whether it states facts that, if true, entitle the petitioner to relief—and also whether the stated claims are for any reason procedurally barred. [Citation.]" (*People v. Romero* (1994) 8 Cal.4th 728, 737.)

Although appellant Jerome Logan (petitioner) has filed two handwritten petitions for habeas corpus, he asks us to "disregard" his first writ, A137892, in lieu of the second writ, A137962. So noted, we quote the basic allegations petitioner has made on habeas corpus: (1) "Had the DMV Records been presented at trial to prove that [p]etitioner was not the owner of the car the proceedings would have been different and it would have undermined confidence in the outcome of [p]etitioner's trial." (2) "The discovery and inspection of those DMV records would have impeached the DA's statements that the car

6

belonged to [p]etitioner." (3) "The evidence against [p]etitioner was not strong enough to sustain confidence in the verdict." (4) "Petitioner was not even the person that committed the crime." (5) "[A]t no time did [p]etitioner's counsel ask me where I was on the day of the robbery this clearly violated my defense. [Citations.] [F]ailure of counsel to investigate and present a defense is very problematic because it shows that counsel 'abandoned a potentially fruitful avenue.' " Based on these allegations, petitioner requests an evidentiary hearing and a remand for a new trial.

"Because a petition for a writ of habeas corpus seeks to collaterally attack a presumptively final criminal judgment, the petitioner bears a heavy burden initially to *plead* sufficient grounds for relief. . . . 'For purposes of collateral attack, all presumptions favor the truth, accuracy, and fairness of the conviction and sentence; *defendant* thus must undertake the burden of overturning them. Society's interest in the finality of criminal proceedings so demands, and due process is not thereby offended.'" (*People v. Duvall* (1995) 9 Cal.4th 464, 474 (*Duvall*), quoting *People v. Gonzalez* (1990) 51 Cal.3d 1179, 1260, original italics.)

To satisfy this heavy initial burden of pleading adequate grounds for relief, the habeas corpus petition must plead the facts with particularity and should "include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations. [Citations.]" (*Duvall*, *supra*, 9 Cal.4th at p. 474; *Younan v. Caruso* (1996) 51 Cal.App.4th 401, 407 ["petitioner bears a heavy burden to first plead sufficient grounds for relief, then prove them"].) "If . . . the court finds the factual allegations, taken as true, establish a prima facie case for relief, the court will issue an [order to show cause]." (*Duvall*, *supra*, 9 Cal.4th at p. 475.) However, a habeas petition may be resolved by a summary denial of the petition when the court determines the petitioner has not presented a prima facie case for relief. (*Ibid.*)

The broad claims made by petitioner are inadequate to warrant *any relief* because petitioner has failed to supply this court with any documentary evidence in support of his claims. (*Duvall*, *supra*, 9 Cal.4th at p. 474.) " 'Conclusory allegations made without any explanation of the basis for the allegations do not warrant relief, let alone an evidentiary

7

hearing.' " (*Ibid.*, quoting *People v. Karis* (1988) 46 Cal.3d 612, 656 (*Karis*).) Furthermore, proof of a petition's allegations must be a demonstrative reality and not merely speculative. (*Ibid.*) Accordingly, petitioner has failed to state a prima facie case for habeas corpus relief.

## IV.

## DISPOSITION

The judgment is affirmed. The petitions are denied.

_____

RUVOLO, P. J.

We concur:

_____

REARDON, J.

_____

RIVERA, J.