Filed 7/10/14  P. v. Illescas CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CESAR ILLESCAS,<br><br>    Defendant and Appellant. | B249601<br><br>(Los Angeles County<br>Super. Ct. No. KA098936)<br><br>ORDER MODIFYING OPINION<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on June 16, 2014, be modified as follows:

1.      Footnote 3 at the bottom of page 3 is deleted.

2.      Page 8, second full paragraph, second line, the name Michelle should be changed to Elizabeth.

3.      Page 9, first full paragraph, the name Michelle which appears on lines 2, 3 and 5 of that paragraph should be changed to Elizabeth.

The petition for rehearing is denied.  No change in judgment.

_____

MOSK. J.                           TURNER, P. J.                           MINK, J.[*]

_____

[*]      Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 6/16/14 (unmodified version)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B249601 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA098936) |
| v. | |
| CESAR ILLESCAS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, Robert M. Martinez, Judge.  Affirmed.

Allison H. Ting, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Linda C. Johnson, Supervising Deputy Attorney General, Tita Nguyen, Deputy Attorney General, for Plaintiff and Respondent.

## INTRODUCTION

Defendant and appellant Cesar Illescas (defendant) was convicted of felony corporal injury to a cohabitant (Pen. Code, § 273.5, subd. (a)[1]); misdemeanor resisting, obstructing, or delaying a peace officer or emergency medical technician (§ 148, subd. (a)(1)); felony unlawful driving or taking of a vehicle (Veh. Code §10851, subd. (a)); and felony assault with a deadly weapon (§ 245, subd. (a)(1)).  On appeal, defendant contends that his conviction for assault with a deadly weapon in violation of section 245, subdivision (a)(1) (count 4), should be reversed because there is not substantial evidence to support a finding that his use of shoes was likely to cause "great bodily injury"; the trial court erred when it instructed the jury pursuant to CALCRIM No. 875 on a legally incorrect theory; the trial court erred by instructing the jury with an implied mandatory presumption that shoes are deadly weapons; and the cumulative errors denied him a fair trial.  We affirm the judgment.

## BACKGROUND

### A.    Factual Background

#### 1.    Prosecution Evidence

##### a)    Counts 1-4

As of August 1, 2012, Elizabeth Doe and defendant had been in an exclusive dating relationship for about eight months, and they lived together.  Elizabeth[2] owned a bond company, and defendant was her employee.  Elizabeth and defendant shared a car that was owned by Elizabeth's company.

---

[1]    All statutory citations are to the Penal Code unless otherwise noted.

[2]    Because Elizabeth Doe and Ysel Doe share the same assigned surname, we refer to them by their first names.

On the evening of August 1, 2012, defendant and Elizabeth were at their home and argued about another woman. During the argument, defendant had on shoes. Defendant said he was going to take Elizabeth's car and leave. Elizabeth did not want him to do so, and told defendant to give to her the keys to her car. Elizabeth called 911, telling the operator that defendant "beat her severely" and was leaving in her car. Elizabeth's repeated requests for defendant to give the keys back to her were audio recorded during the 911 telephone conversation. During Elizabeth's conversation with the 911 operator, defendant left the home in her car.

West Covina City Police Officers Sean Carmon and Sam Ling responded to the domestic violence call and contacted Elizabeth. Officer Ling testified that Elizabeth said defendant kicked her approximately nine times on her arms and legs while she was on the floor, choked her using both of his hands, and dragged her into the bedroom where he kicked her three more times on the legs. Elizabeth told Officer Ling that a "very similar incident" occurred on July 5, 2012. Regarding that incident, defendant begged Elizabeth for forgiveness, and so she forgave him and did not call the police.

According to Elizabeth, she told the officers that defendant was upset, appeared to be intoxicated, threw a can of beer at her, grabbed her by the hair, threw her to the living room floor, kicked her approximately nine times on her arms and legs while she was on the floor and defendant was wearing shoes, slapped her on her face three times using an open hand, and choked her using both hands and did not let go until she almost passed out. Elizabeth testified at trial that she had lied to the police officers, did not want defendant prosecuted, and recanted her prior statements that defendant assaulted her.

The police officers took photographs of Elizabeth[3] depicting redness and a dark purple bruise on her arm, a bruise on her right leg, a mark over her left eye, and scratches on her finger and neck, all injuries Elizabeth told the officers she sustained when defendant punched, kicked, and choked her.

---

[3]    The photographs, indentified as exhibits 4 through 6, and introduced as evidence, are not part of the record on appeal.

Officer Ling testified that he did not call for an ambulance for Elizabeth because he asked her if she required medical assistance and she responded, "No." According to Officer Ling, he did not think she needed medical attention because there was "nothing that appeared to be very serious at the time."

On August 3, 2012, West Covina City Police Officers Major Whitlock and Sean Carmon, armed and in uniform, went to defendant's home and saw him at the rear of his house. Officer Whitlock described defendant as having a "muscular build." Officer Whitlock ordered defendant to get down on the ground. Defendant turned to look directly at the officers and said, "Fuck you." After Officer Whitlock again ordered defendant to get on the ground, defendant looked directly at the officers, cursed, refused to comply with the order, and threw the 40-ounce beer bottle against the garage, causing it to shatter. After refusing a third time to get down on the ground and looking as if he was going to run, Major Whitlock shot defendant with the bean bag gun. After additional orders to get down on the ground, defendant complied. Defendant struggled, however, for several more minutes after he was handcuffed until ultimately he was restrained and taken into custody.

### b) Prior Uncharged Conduct

One night in 2008, defendant visited his ex-girlfriend, Ysel Doe, punched her in the forehead, scratched her cheek, bit her neck, and threatened to kill her. As a result of the incident, Ysel suffered bruises on her forehead, and had marks on her cheek and neck.

### 2. *Defendant's Evidence*

Defendant did not present evidence on his behalf at trial.

### B. Procedural Background

The District Attorney of Los Angeles County filed an amended information charging defendant with felony, corporal injury to a cohabitant in violation of section 273.5, subdivision (a) (count 1); misdemeanor resisting, obstructing, or delaying a peace

officer or emergency medical technician in violation of section 148, subdivision (a)(1) (count 2); felony unlawful driving or taking of a vehicle in violation of Vehicle Code section 10851, subdivision (a) (count 3); and felony assault with a deadly weapon in violation of section 245, subdivision (a)(1) (count 4). The District Attorney alleged as to counts 1, 3, and 4 that (1) defendant had been released from custody on bail on his own recognizance at the time of the commission of the alleged offenses, within the meaning of section 12022.1; (2) defendant suffered a prior conviction of a serious or violent felony or juvenile adjudication for robbery in violation of section 667, subdivisions (b) through (i); and (3) any sentence executed shall be served in state prison pursuant to section 1170, subdivision (h)(3). District Attorney further alleged as to count 4 that defendant suffered a prior serious felony in violation of section 667, subdivision (a)(1).

Following a trial, the jury found defendant guilty on all counts, and defendant admitted the truth of the priors and bail allegations. The trial court denied probation for defendant and sentenced him to state prison for a term 16 years and four months. Specifically, the trial court imposed and stayed a term of eight years in state prison (the upper term of four years doubled pursuant to sections 667, subdivision (b) and 1170.12, subdivisions (a) through (d)), on count 1; imposed a term of 299 days in county jail with credit for time served as to count 2, which term was ordered to run concurrently with the sentences on the other counts; a term of 16 months in state prison (double the midterm of eight months pursuant to sections 667, subdivision (b) and 1170.12, subdivisions (a) through (d)) as to count 3, which term it ordered to run consecutively to the sentence in counts 1 and 4; and imposed a term of 15 years in state prison (double the upper term of four years pursuant to sections 667, subdivision (b) and 1170.12, subdivisions (a) through (d), plus a term of five years in state prison pursuant to section 667, subdivision (a), and a term of two years in state prison pursuant to section 12022.1) on count 4.

The trial court ordered defendant to pay various fees, fines and penalties, and awarded defendant custody credit. Defendant filed a timely notice of appeal.

## DISCUSSION

### A.       Substantial Evidence

Defendant contends that his conviction for assault with a deadly weapon in violation of section 245, subdivision (a)(1) (count 4), should be reversed for lack of substantial evidence to support a finding that his shoes were a deadly weapon because the evidence did not show that his use of shoes was likely to cause "great bodily injury."  We disagree.

#### 1.       *Standard of Review*

"'In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves.  Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."  [Citations.]  We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.  [Citation.]  [¶] . . .  "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding."  [Citation.]  We do not reweigh evidence or reevaluate a witness's credibility.  [Citation.]'  [Citations.]"  (*People v. Scott* (2011) 52 Cal.4th 452, 487.)

#### 2.       *Analysis*

The present version of section 245, subdivision (a)(1) was in effect on August 1, 2012, when defendant committed the crime of assault with a deadly weapon.  It provides, "Any person who commits an assault upon the person of another with a deadly weapon or

instrument other than a firearm shall be punished by imprisonment in the state prison . . . ."**4**

"'As used in section 245, subdivision (a)(1), a "deadly weapon" is "any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury."' [Citation.] . . . [¶] . . . [¶] Great bodily injury, as used in section 245, means significant or substantial injury. [Citation.] Because the statute speaks to the capability of inflicting significant injury, neither physical contact nor actual injury is required to support a conviction. [Citation.]" (*People v. Brown* (2012) 210 Cal.App.4th 1, 6-7.)

"The Supreme Court has explained section 245 contemplates two categories of deadly weapons: In the first category are objects that are 'deadly weapons as a matter of law' such as dirks and blackjacks because 'the ordinary use for which they are designed establishes their character as such. [Citation.] Other objects, while not deadly per se, may be used, under certain circumstances, in a manner likely to produce death or great bodily injury.' ([*People v.*] *Aguilar* [(1997) 16 Cal.4th 1023,] 1029 [(*Aguilar*)]; accord, *In re David V.* (2010) 48 Cal.4th 23, 30, fn. 5 [104 Cal.Rptr.3d 471, 223 P.3d 603]; see

---

**4** "Former section 245, subdivision (a)(1) [effective until January 1, 2012, prior to when defendant committed the crime of assault with a deadly weapon] included both assault with a deadly weapon and assault with force likely to produce great bodily injury. (Former § 245, subd. (a)(1), as amended by Stats. 2011, ch. 15, § 298 ['Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury shall be punished . . . .'].) [¶] [T]he Legislature deleted from [former] section 245, subdivision (a)(1) the phrase 'or by any means of force likely to produce great bodily injury' following the word 'firearm' and added a new subdivision (a)(4) to section 245 that defined the offense of assault by force likely to produce great bodily injury. (Stats. 2011, ch. 183, § 1.)" (*People v. Fox* (2014) 224 Cal.App.4th 424, 429, fn. 3.) The legislative history indicates the amendment was designed to ameliorate confusion arising in assessing prior convictions because "[a] prosecutor will see [section] 245 [subdivision] (a)(1) on a defendant's rap sheet and not know if it was an assault with a deadly weapon or an assault likely to produce great bodily injury." (Assem. Com. on Pub. Safety, Rep. on Assem. Bill No. 1026 (2011-2012 Reg. Sess.) as introduced Feb. 18, 2011, pp. 1-2.) Under the present version of section 245, subdivision (a)(1) applicable to defendant, the assault must have been with a deadly weapon.

*Aguilar*, at p. 1030 ['deadly weapons or instruments not inherently deadly are defined by their use in a manner capable of producing great bodily injury'].)  For example, a bottle or a pencil, while not deadly per se, may be a deadly weapon within the meaning of section 245, subdivision (a)(1), when used in a manner capable of producing and likely to produce great bodily injury.  (See, e.g., *People v. Zermeno* (1999) 21 Cal.4th 927, 931 [89 Cal.Rptr.2d 863, 986 P.2d 196] [beer bottle]; *People v. Page* (2004) 123 Cal.App.4th 1466, 1472 [20 Cal.Rptr.3d 857] [pencil].)"  (*People v. Brown*, *supra*, 210 Cal.App.4th at pp. 6-7.)

"A shod foot [a shoed foot] is not a weapon in the strict sense.  But it is capable of being so used."  (*People v. Wood* (1961) 192 Cal.App.2d 393, 397; *People v. Bennett* (1962) 208 Cal.App.2d 317, 320.)  "There can be no doubt that some footwear, such as hobnailed or steel-toed boots, is capable of being wielded in a way likely to produce death or serious injury, and as such may constitute weapons within the meaning of section 245, subdivision (a)(1)."[5]  (*Aguilar, supra,* 16 Cal.4th at p. 1035.)

Defendant contends that there is not substantial evidence to support a finding that his shoes were a deadly weapon likely to cause great bodily injury because Michelle said defendant kicked her on her arms and legs; she sustained only "minor and insubstantial [injuries], consisting of red marks and scratches, and a 'dark purple bruise"; and her injuries did not appear to the responding officer to require medical attention.

As noted above, however, "neither physical contact nor actual injury is required to support a conviction.  [Citation.]"  (*People v. Brown*, *supra*, 210 Cal.App.4th at pp. 6-7.)  In *People v. Brown*, the defendant claimed that the evidence was insufficient to support the jury's finding that the BB gun he used to shoot his victims was a deadly weapon within the meaning of section 245, subdivision (a)(1), arguing that relatively minor nature of the injuries suffered by the victims—red welts on one victim's foot and on another victim's back—did not support a reasonable inference the weapon was either capable of

---

[5]     "[A] 'deadly weapon' within the meaning of section 245 must be an object extrinsic to the human body.  Bare hands or feet, therefore, cannot be deadly weapons . . . ."  (*Aguilar*, *supra*, 16 Cal.4th at p. 1034.)

causing great bodily injury or used in a manner capable of producing and likely to produce great bodily injury. The court rejected defendant's contention, stating, "Although the shots hit [the victims] in the foot and . . . in the back, the jury could have reasonably inferred the location and severity of their injuries were fortuitous: Had [the victims] not thrown themselves on the ground for cover, they just as easily could have been hit in the face, causing serious injury. Under these circumstances there is substantial evidence from which the jury could reasonably find a BB gun, when shot at close range in the manner indicated, was a deadly weapon under section 245, subdivision (a)(1)." (*People v. Brown, supra,* 210 Cal.App.4th at p. 8.)

Officer Whitlock testified that defendant had a "muscular build," and the jury could observe his physical attributes. Michelle testified that defendant appeared intoxicated when the incident occurred. Defendant angrily kicked Michelle with his shoes approximately 12 times. The jury reasonably could have inferred that the location and severity of Elizabeth's injuries were fortuitous. In addition, given that Michelle sustained injuries to her eye and back of her neck, the jury reasonably could infer that defendant not only kicked her on her arms and legs, but also kicked her on the head, face, and neck, such that defendant's shod feet constituted a deadly weapon.

Defendant also contends that there is not substantial evidence to support a finding that his shoes were a deadly weapon because there is no evidence of the type of footwear he was wearing when he kicked Elizabeth. Evidence of type of footwear worn by defendant is not required. In *People v. Brown*, *supra*, 210 Cal.App.4th 1, the defendant claimed that there was insufficient evidence to support the jury's finding that the BB gun he used to shoot his victims was a deadly weapon because "there was no evidence presented as to the type of BB gun used, its operating speed or the extent to which the projectiles fired from it could penetrate muscle or tissue." (*Id*. at p. 7.) The court rejected defendant's contention, stating, "While it certainly would have been good practice for the People to have introduced evidence concerning the nature of the BB gun and its ability to inflict substantial injury [citation], such evidence is not essential to establish the deadly nature of the weapon [citation.]" (*Id*. at p. 8.) And, as the Supreme

9

Court stated, "While evidence is lacking regarding the type of footwear worn by the four assailants, that they *were* shod is not disputed. This fact, together with evidence concerning the circumstances of the assault, thus provides some evidence from which the jury could find the assailants wielded their shod feet in a manner capable of producing, and likely to produce, death or great bodily injury." (*Aguilar*, *supra*, 16 Cal.4th at p. 1035.) Here, it is undisputed that defendant was shod when he kicked Elizabeth, and, as noted above, there was evidence from which the jury could find defendant wielded or could have wielded his shod feet in a manner capable of producing, and likely to produce, great bodily injury.

## B. CALCRIM No. 875

Defendant contends that the trial court erred when it instructed the jury pursuant to former CALCRIM No. 875 on a legally incorrect theory. Defendant argues that CALCRIM No. 875 permitted the jury to convict him of assault with a deadly weapon (count 4) on a finding that a weapon is "inherently dangerous," even if not "inherently deadly" or "used in a manner capable of causing or likely to cause great bodily injury," thus requiring reversal. The error was harmless.

### 1. *Standard of Review*

"When considering a claim of instructional error, we view the challenged instruction in the context of the instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner. [Citation.]" (*People v. Houston* (2012) 54 Cal.4th 1186, 1229; *People v. Moore* (2011) 51 Cal.4th 1104, 1140.)

### 2. *Background Facts*

The trial court, without objection, instructed the jury with a modified version of former CALCRIM No. 875 that was in effect at the time defendant committed the offense of assault with a deadly weapon. The jury was instructed, in pertinent part, "The

10

defendant is charged in count 4 with assault with a deadly weapon in violation of . . . section 245. [¶] . . . [¶] A deadly weapon other than a firearm is any object, instrument, or weapon that is inherently deadly *or dangerous* or one that is used in such a way that it is capable of causing and likely to cause death or great bodily injury." (Italics added.)

### 3. Analysis

The Attorney General contends that defendant forfeited this challenge to former CALCRIM No. 875 by failing to object in the trial court regarding that jury instruction. The forfeiture "rule does not apply when, as here, the trial court gives an instruction that is an incorrect statement of the law. [Citations.]" (*People v. Hudson* (2006) 38 Cal.4th 1002, 1012.) In any event, "we review the merits of any claim of instructional error that allegedly affects a defendant's substantial rights, even in the absence of an objection. [Citations.]" (*People v. Brown*, *supra*, 210 Cal.App.4th at p. 9, fn. 5.)

The trial court's erred in instructing the jury pursuant to former CALCRIM No. 875 on a legally incorrect theory. As stated in *People v. Brown*, *supra*, 210 Cal.App.4th 1, "[Former] CALCRIM No. 875 may impermissibly allow a jury to convict a defendant of assault with a deadly weapon if it finds the weapon employed was inherently dangerous, even if it rejects the notion that the instrument was inherently deadly or used in a manner capable of causing and likely to cause death or great bodily injury. That possibility, however theoretical it may be in most cases, should be obviated by an appropriate modification of the language in [former] CALCRIM No. 875." (*Id*. at p. 11, fn omitted.) The current version of CALCRIM No. 875 omits the reference to "or dangerous" after the phrase "inherently deadly."

The trial court's error in instructing the jury pursuant to former CALCRIM No. 875 on a legally incorrect theory was, however, harmless. "Although the general rule in cases involving a legally inadequate theory 'has been to reverse the conviction because the appellate court is "'unable to determine which of the prosecution's theories served as the basis for the jury's verdict'"" ([*People v.*] *Guiton* [(1993)] 4 Cal.4th [1116], 1130),

11

even this type of error can, in an appropriate case, be harmless: 'If other aspects of the verdict or the evidence leave no reasonable doubt that the jury made the findings necessary [with respect to the element of the crime at issue], the erroneous . . . instruction [on that element] was harmless.' (*People v. Chun* (2009) 45 Cal.4th 1172, 1205 [91 Cal.Rptr.3d 106, 203 P.3d 425]; see *People v. Harris* (1994) 9 Cal.4th 407, 424 [37 Cal.Rptr.2d 200, 886 P.2d 1193] [harmless error test traditionally applied to misinstruction on the elements of an offense is 'whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained"' (quoting *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824]).) '"To say that an error did not contribute to the verdict . . . is . . . to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record."' ([*People v.*] *Harris*[, *supra*,] at p. 430, italics omitted.)" (*People v. Brown*, *supra*, 210 Cal.App.4th at pp. 12-13.) Errors in instructing the jury with both correct and incorrect elements of an offense are subject to the federal harmless error analysis under *Chapman v. California*, *supra*, 386 U.S. at page 24 of harmless beyond a reasonable doubt. (*People v. Swain* (1996) 12 Cal.4th 593, 607; *People v. Calderon* (2005) 129 Cal.App.4th 1301, 1306 [harmless beyond a reasonable doubt standard applies when prosecutor presents both correct and incorrect theories of guilt to jury].)

Notwithstanding the erroneous language in the instruction, the prosecutor's theory of the case was premised on a legally valid theory—that defendant's shod feet were "used in such a way that [they were] capable of causing and likely to cause death or great bodily injury." (CALCRIM No. 875; *Aguilar*, *supra*, 16 Cal.4th at pp. 1028-1029.) The prosecutor did not present to the jury an incorrect theory. The prosecutor stated during closing argument that, "Again, the charged count is 245(a)(1), assault with a deadly weapon, to wit, or the weapon is shod feet, old term, real term. Shoed. They were wearing shoes. Even though shoes aren't necessarily a weapon in themselves, it's how you use it because you can take any ordinary object, and you can inflict great bodily injury, more than moderate or minor harm. [¶] An example is, yeah, this power strip here. All right. It's a power strip. But can you turn it into a weapon to strangle

12

someone?  Can you beat somebody over the head with it if you keep on pounding someone over the head?  That's where you decide with the shoe.  A shoe can be on the floor and be nothing.  You can put—throw a shoe and be nothing, but you put a shoe on a foot and start swinging the foot, it then becomes a weapon."  And, as noted above, there is substantial evidence to support a finding that his use of shoes was likely to cause "great bodily injury."  As the court in *People v. Brown*, *supra*, 210 Cal.App.4th 1 stated, "Considering the record as a whole and in light of all the instructions given, we are persuaded beyond any reasonable doubt the error in CALCRIM No. 875 was unimportant in relation to everything else the jury considered on the issue in question."  (*Id*. at pp. 13-14; *People v. Harris*, *supra*, 9 Cal.4th at p. 430.)

### C.    Implied Mandatory Presumption

Defendant contends that the trial court violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution by instructing the jury with a modified version of CALCRIM No. 875 constituting an implied mandatory presumption that defendant's shoes were deadly weapons.  Defendant argues that his conviction for assault with a deadly weapon (count 4), therefore, should be reversed.

#### 1.    *Standard of Review*

"The independent or de novo standard of review is applicable in assessing whether instructions correctly state the law [citations] and also whether instructions effectively direct a finding adverse to a defendant by removing an issue from the jury's consideration [citations]."  (*People v. Posey* (2004) 32 Cal.4th 193, 218.)

#### 2.    *Analysis*

The trial court instructed the jury with a modified version of CALCRIM No. 875, adding the following:  "The People have charged that the deadly weapon used in this case was shod feet.  Shod feet means shoed feet, in other words, feet with footwear."

13

Defendant contends that this modification constituted an implied instruction defining shod feet as a deadly weapon.

The challenged modification is simply a restatement of the information charging defendant with count 4, and defined "shod feet." The information provided that, "[t]he crime of ASSAULT WITH A DEADLY WEAPON, in violation of [section] 245(a)(1), a Felony, was committed by [defendant] . . . with a deadly weapon, to wit, shodfeet." Contrary to defendant's contention, the trial court did not instruct the jury that shod feet were deadly weapons as a matter of law. The modified version of CALCRIM No. 875 left the factual determination to the jury whether shod feet in this case were used as a deadly weapon. As stated above, the prosecutor argued to the jury that, "[S]hoes aren't necessarily . . . weapon[s] in themselves, it's how you use [them] . . . . That's where you decide with the shoe. A shoe can be on the floor and be nothing. You can put—throw a shoe and be nothing, but you put a shoe on a foot and start swinging the foot, it becomes a weapon." The jury could not have reasonably construed the challenged language of CALCRIM No. 875, as modified, as a mandate that it had to conclude that shod feet were a deadly weapon as a matter of law.

### D. Cumulative Error

Defendant contends that the cumulative errors in this case contributed to the verdict and denied him a fair trial. "[A] defendant [is] entitled to a fair trial but not a perfect one." (*People v. Cunningham* (2001) 25 Cal.4th 926, 1009.) Because we reject or find harmless each of defendant's contended errors, there is no cumulative prejudicial effect justifying reversal. (*People v. Watson* (2008) 43 Cal.4th 652, 704.)

14

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


MOSK, J.


We concur:


TURNER, P. J.


MINK, J.[*]

---

[*]     Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.